THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ELERY THOMAS, Also Known as THOMAS ELERY, Appellant.

First Department, December 6, 1979

## APPEARANCES OF COUNSEL

*Erica Horwitz* of counsel *(William E. Hellerstein,* attorney), for appellant.

*Kenneth R. Larywon* of counsel *(Billie Manning* with him on the brief; *Mario Merola, District Attorney),* for respondent.

## OPINION OF THE COURT

SULLIVAN, J.

Defendant was convicted of three counts of murder in the second degree (Penal Law, § 125.25, subd 1 [intentional killing]), for killing his "girlfriend", Deborah Williams,[1] and her two daughters. From the proof, essentially circumstantial, except for a full, detailed confession, the admissibility of which is not at issue, it appears that jealousy was the motive.

The confession established that at about 1:00 A.M., on March 21, 1977, defendant went to Deborah's apartment to speak to her because earlier that evening he had heard her talking to a man in another apartment. When defendant confronted Deborah about the other man, she was lying on a sofa bed in the living room watching television. Defendant seated himself on the arm rest. Michele, Deborah's five-year-old daughter, was asleep on the bed between them. Deborah denied his accusations that she had been "messing around". They began arguing. During the argument he reached across the bed and struck her. When she turned over in the bed, defendant pulled out a knife which he had been carrying and stabbed her in the back. As he tried to remove the knife, the handle came off. He then jumped over Michele and struck Deborah again, causing her to fall to the floor. When she attempted to get up, he kicked her.

By this time Michele had awakened, and defendant told her to go to the bedroom and stay with her sister, Karen. When the children began to cry, defendant took a pair of scissors which he had found in a kitchen cabinet, went to the bedroom, and stabbed both girls in the back as they lay in bed.

Defendant then returned to the living room. After propping Deborah up on the bed, he went to the refrigerator, took out ice, wrapped it in a towel, and placed it on her forehead. When Deborah, still conscious, asked why Michele was crying, he told her that she wanted "to come back into the living room". He then returned to the bedroom and stabbed Michele repeatedly with the scissors. He went once more to the living room and began stabbing Deborah with the scissors. Finally,

---

1. Although defendant believed Deborah to be his girlfriend, it is not clear that she had the same view of their relationship.

he went back again to the bedroom and stabbed Karen, and at 4:00 A.M., when it "was quiet", shut off the television, returned to his own apartment and went to bed. In all, he had stabbed his three victims 45 times, although many of the stab wounds were superficial.

The bodies were not discovered until approximately 12:30 P.M. that afternoon. The two children were still alive. Karen, three years old, died two hours after her arrival at the hospital. Michele died the following morning. All three victims died of skull fractures, contusions and lacerations of the brain, and multiple stab wounds.

Defendant, who testified in his own behalf, denied any involvement in the killings and disclaimed the confession as the product of coercion by threats and force. Thus, the affirmative defense of extreme emotional disturbance (Penal Law, § 125.25, subd 1, par [a]) was not raised. Furthermore, defendant specifically requested that the court not charge the lesser included offense of manslaughter in the first degree (Penal Law, § 125.20, subd 2), based upon extreme emotional disturbance.

The trial court submitted murder in the second degree to the jury and, in accordance with defendant's request, the lesser included offense of manslaughter in the first degree (Penal Law, § 125.20, subd 1 [intent to cause serious physical injury, but not to kill]), was submitted in the alternative. In its charge, after distinguishing motive from intent and explaining that intent was a silent operation of the mind which could be determined from the facts and all the surrounding circumstances, the court gave the following instruction, which is at the center of defendant's appellate argument that he was denied his due process rights to a fair trial: "On the question of intent *the law says that a person is presumed to intend the natural and probable consequences of his act.* You will readily understand that the intention with which a person commits an act or a crime is seldom, if ever, put into words before a commission of the crime. Crimes are ordinarily secret and a person does not advertise beforehand or say beforehand what he intends to do. *So the law says a person is presumed to intend that which he actually does.* A person acts intentionally with respect to a result or to conduct when his conscious objective is to cause such result or engage in such conduct." (Emphasis added.)

An essentially identical charge was recently found to be

defective by the United States Supreme Court in *Sandstrom v Montana* (442 US 510). In that case the jury was charged that "the law presumes that a person intends the ordinary consequences of his voluntary acts" (p 2453). The court stated that the defendant, who had been charged with deliberate homicide, in that he "purposely or knowingly caused the death" (p 2453), had been deprived of due process of law, and that "the instruction given [was] unconstitutional" (p 2460). The court found that such an instruction, without qualification, violates a defendant's right to due process, since it serves either to shift the burden of persuasion to the defendant, or create a conclusive presumption as to the element of intent.

■ Conceding that the instruction in this case was error, and that the court should have explained that the presumption of intent was permissive, not mandatory, and, in any event, rebuttable, the People argue that the error was, nevertheless, harmless.

The error here was of constitutional dimension in that it involved a shifting of the People's burden of proof as to the elements of a crime: "Lest there remain any doubt about the constitutional stature of the reasonable-doubt standard, we explicitly hold that the Due Process Clause protects the accused against conviction except upon proof beyond reasonable doubt of every fact necessary to constitute the crime with which he is charged." *(Matter of Winship,* 397 US 358, 364.) An error of constitutional magnitude cannot be harmless unless "there is no reasonable possibility that the error might have contributed to defendant's conviction" *(People v Crimmins,* 36 NY2d 230, 237.)

The charge complained of here cannot be deemed to constitute harmless error since it absolved the People of the duty to prove an essential element of murder in the second degree, viz., intent to kill. Although, in his confession, defendant had admitted the stabbings, he at no time verbally expressed the *mens rea* with which he acted. His narrative is a chronology of what he did, never indicating, though it is inferable, what his objective was. Thus, even though the jury accepted the truthfulness and voluntariness of the confession, it still had to determine whether defendant acted with the requisite intent. The court, in effect, directed the jury to find an intent to kill because defendant's acts caused death.

Given both an unqualified charge that a person is presumed

to intend the natural consequences of his act, and evidence that the victims' deaths were the result of injuries caused by multiple stabbings which defendant admitted committing, the jury would hardly need to deliberate on either intent to kill, the essential predicate to a finding of guilt of murder in the second degree, or intent to cause serious physical injury, an element of manslaughter in the first degree.[2]

Moreover, having recognized the existence of a reasonable view of the evidence to justify the submission of manslaughter in the first degree as a lesser included offense (CPL 300.50, subd 1),[3] the court removed from the jury the single issue which distinguished murder in the second degree from manslaughter in the first degree, and deprived defendant of whatever chance he had for conviction of only the lesser offense. Although the extent of the wounds and defendant's repeated sorties to both rooms to stab his victims militate against a finding that defendant acted with any intent other than to kill, the trial court believed the issue was open to different conclusions. By charging on intent as it did, however, the court, in effect, removed the lesser offense from the jury's consideration.

That the court did charge the statutory definition of intent (Penal Law, § 15.05, subd 1),[4] did state that an element of murder in the second degree was a conscious objective to cause the death of the victims, and that elsewhere in its general instructions did charge that the People must prove every element of the crimes beyond a reasonable doubt do not compensate for the error. The statutory standard of intent is rendered meaningless once the criteria for its determination is explained in terms of a presumption.

---

**2.** " 'Serious physical injury' means physical injury which creates a substantial risk of death, or which causes death or serious and protracted disfigurement, protracted impairment of health or protracted loss or impairment of the function of any bodily organ." (Penal Law, § 10.00, subd 10.) Thus, even were it otherwise appropriate, we could not exercise our appellate power and sustain the verdict by reducing the conviction to manslaughter in the first degree (Penal Law, § 125.20, subd 1) and remanding for resentence (CPL 470.15, subd 2, par [a]; see *People v Young,* 66 AD2d 666).

**3.** "[T]he court in its discretion may, in addition to submitting the greatest offense which it is required to submit, submit in the alternative any lesser included offense if there is a reasonable view of the evidence which would support a finding that the defendant committed such lesser offense but did not commit the greater."

**4.** "A person acts intentionally with respect to a result or to conduct described by a statute defining an offense when his conscious objective is to cause such result or to engage in such conduct."

■ The People argue also that any error with respect to the charge is not preserved for appellate review since defendant failed to take an appropriate exception. But, as the Court of Appeals has noted, "no exception is necessary to preserve for appellate review a deprivation of a fundamental constitutional right". *(People v McLucas,* 15 NY2d 167, 172; see, also, *People v Patterson,* 39 NY2d 288, affd 432 US 197.)

Consequently, the judgment, Supreme Court, Bronx County (D. SULLIVAN, J.), rendered December 15, 1977, should be reversed, on the law, and the matter remanded for a new trial.

LUPIANO, J. (dissenting). The critical factor which prompts my departure from the scholarly and articulate majority opinion lies in the application of the legal maxim cited by the majority to the effect that "[a]n error of constitutional magnitude cannot be harmless unless 'there is no *reasonable* possibility that the error might have contributed to defendant's conviction' *(People v Crimmins,* 36 NY2d 230, 237)" (emphasis supplied). Under the circumstances herein, given the defendant's confession, the circumstances surrounding the crime, and in view of the entire record herein, it is my considered view that although a mere possibility exists that the error might have contributed to the defendant's conviction, that possibility is simply *not* a reasonable one. The quantum and character of the injuries inflicted on the victims, coupled with the defendant's confession, belie anything other than an intent to kill. The record demonstrates an attack on an adult female, in a living room, by stabbing with a knife and beating, the traversing of the premises into another room, a bedroom, and in the latter room, the stabbing repeatedly with a scissors of the adult victim's two infant children, the subsequent return to the living room where the wounded adult lay, and, after an interval, a return to the bedroom containing the two little girls and again stabbing repeatedly one who was crying, a further return to the living room and more stabbing of the adult victim, and yet another return to the bedroom and repeated stabbing of the other child.

It is not just the number of times the defendant stabbed his three victims (45 times), but the time intervals and the physical spaces traversed which mandate the conclusion on this record that *no reasonable possibility* exists that the error might have contributed to the defendant's conviction. The majority aptly note that the affirmative defense of extreme

emotional disturbance was not raised. Indeed, three weeks prior to these brutal attacks, defendant stated to another that he would kill the female adult victim.

Restated in other terms, it is my conclusion that the trial court erred as a matter of law in submitting the lesser included offense of manslaughter in the first degree, as there is no reasonable view of the evidence which would support such a finding (CPL 300.50, subd 1).* No reasonable view of the evidence on this record would permit a finding that defendant intended merely to cause physical injury to his victims (Penal Law, § 125.20, subd 1) rather than intending to cause the death of his victims (Penal Law, § 125.25).

FEIN, J. P., LANE and LYNCH, JJ., concur with SULLIVAN, J.; LUPIANO, J., dissents in an opinion.

Judgment, Supreme Court, Bronx County, rendered on December 15, 1977, reversed, on the law, and the matter remanded for a new trial.

---

* CPL 300.50 (subd 1) states, in part: "If there is no reasonable view of the evidence which would support such a finding, the court may not submit such lesser offense."