THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v
MANUEL CAVALLERIO and ANTHONY COLABELLA, Appel-
lants.

First Department, December 11, 1979

## APPEARANCES OF COUNSEL

*Robert Koppelman* for Manuel Cavallerio, appellant.

*Lynn W. L. Fahey* of counsel *(Carol Berkman* with her on the brief; *William E. Hellerstein,* attorney), for Anthony Colabella, appellant.

*Allen H. Saperstein* of counsel *(Billie Manning* with him on the brief; *Mario Merola, District Attorney),* for respondent.

## OPINION OF THE COURT

Ross, J.

Defendants appeal from their conviction of rape in the first degree, rendered on April 17, 1978, following a jury trial. Both defendants were sentenced to an indeterminate term of imprisonment not to exceed six years.

Reversal is sought on numerous grounds; the primary question is whether the total effect of various trial errors, of a questionable and prejudicial character, may have effectively denied defendants a fair trial.

On May 13, 1977, the complainant, a 21-year-old woman, and a male companion were present at a Mount Vernon discotheque. After her companion departed, complainant encountered the defendants, whom she had previously known. Defendant Colabella introduced a third male known as "Richie". In the course of conversation, complainant accepted Colabella's offer of a ride home. When the discotheque closed, complainant, Colabella and "Richie" left in the latter's car. Defendant Cavallerio followed in his car. They drove to "Richie's" house where complainant accepted an offer to enter and have a drink. The complainant asserted that while in "Richie's" apartment, Colabella picked her up, carried her into the bedroom and threw her upon the bed. She pushed him away and returned to the living room. Colabella pursued her, pulled her back by the arm into the bedroom where he forcibly raped her. After Colabella left the room, Cavallerio entered and also forcibly raped her. The complainant was not certain whether the apartment was located in Bronx County or in Westchester County. She arrived home about 7:00 A.M.

and informed her father of the early morning incident. She was examined later that morning by a physician who found a five-inch scratch on the outside portion of her thigh and noticed that there was an irritation in the vaginal area which could have been caused by forcible intercourse. Five days later the rape was reported to the police. The complainant admitted that in March of 1977 and again approximately two weeks before trial, she had voluntary intercourse with Colabella.

In view of the prior and subsequent voluntary sexual intercourse the case hinges on a determination whether the alleged rape was forcible. The claimed errors of incorrect venue, prosecutorial misconduct and inappropriate charge must be considered on the basis of this closely contested issue.

■ *Venue:* It is the People's burden to prove either that the crime occurred in the county in which it is prosecuted or that one of the statutory exceptions is applicable. In either event, when the question of venue is in issue, it is for the jury to determine the actual place where the crime was committed. It is doubtful that it would ever be appropriate for the court to decide the issue as a matter of law, on the theory that the People have met their burden by uncontradicted proof. The defendants, by their cross-examination of complainant, and by their request to charge, have raised factual issues concerning the venue of this alleged crime. In *People v Moore* (46 NY2d 1, 7), the Court of Appeals stated that when "the defendant requests the court to instruct the jury to determine the factual predicate for the venue it has been held to be error to refuse the charge even though the People's proof with respect to venue may be uncontradicted". The question of venue was strenuously litigated, and thus constituted an important issue to be resolved. The complainant testified that she was uncertain as to the location of the house where the alleged rape took place. Accordingly, it was error for the Trial Justice to rule on the question of venue as a matter of law. This issue should have been submitted to the jury for their determination.

■ *Prosecutorial Misconduct:* The record indicates that the People, contrary to settled principles, introduced evidence of defendants' alleged past criminality, although they neither testified nor placed their character in issue, and after defendants' *Sandoval* motion had been granted. The prosecutor deliberately elicited from the complainant the reason for her reluctance to testify: "The reason I didn't want to testify, was

*because I know that they have both been charged before with rape. They have beaten it every time.* I say, why should I have to humiliate myself". (Italics supplied.) Defense counsel immediately moved for a mistrial, which was denied after extensive argument. It is important to note that the prosecutor was cognizant of the prior *Sandoval* hearing and apprised of the court's ruling, making it that much more prejudicial and improper for him to have posed the question he did, knowing full well the answer would be in the form set forth above. Additionally, the following appears: Defense counsel stated to the court, "I asked him, (prosecutor) you seem to be kind of happy?". He said to me, "Well, that's the breaks. You had the pictures,[1] we had this". The court then inquired of the prosecutor, "you knew that if she was asked the question, why, she would give the answer she gave on this witness stand?", and the prosecutor replied: "The answer is, Yes."

What we find most disturbing about the colloquy is that the prosecutor, an experienced senior trial assistant, acknowledged that he deliberately elicited an answer of such an unquestionably prejudicial character as to fatally undermine the inherent fairness of the trial. "This inflammatory testimony virtually challenged the jury to determine whether it should permit defendant to also 'beat' his latest (alleged) rape attempt". *(People v Jackson,* 50 AD2d 905, 906.)

Although the trial court did instruct the jury to "remove" the complainant's answer from their minds, that "it is not evidence in any way in this case," we feel that no amount of curative instruction could sufficiently erase from the jurors' minds the damaging statements presented. "In the jury's eyes these references to the defendant's criminal background may have made 'the difference between the trial of a man presumptively innocent of any criminal wrongdoing and the trial of a known [rapist]' *(United States v Reed,* 376 F2d 226, 228)." *(People v Mullin,* 41 NY2d 475, 480.) This testimony was so devastating that there can exist no justification for placing it before the jury.

Moreover, the prosecutor was fully aware of the court's *Sandoval* ruling. This would preclude him using the alleged prior charges on cross-examination of the defendants.[2] The

---

1. The pictures referred to were of the complainant leaving Colabella's apartment after having voluntary sexual relations with him approximately two weeks before trial. The photographs had been admitted into evidence.

2. The prior charge against appellant Colabella had been dismissed and therefore

*(n. contd.)*

*Sandoval* ruling has been premised on a finding that the prejudicial impact of evidence of the defendant's prior conviction and charges would outweigh its probative value. When the prosecutor asked a question of the complainant, knowing that her answer would refer to the prior rape charges, he deliberately violated the court's preclusion order and therefore ignored, by design, certain fundamental rules which should have governed the presentation of this case. "It has long been settled that a prosecutor is a quasi-judicial officer, who represents the People of the State, and is presumed to act impartially, solely in the interests of justice" *(People v Fielding,* 158 NY 542), "and his primary duty is to see that justice is done and the rights of all—defendants included—are safeguarded. There is a positive obligation on his part to see that a trial is fairly conducted [citing case]. He should be as zealous in protecting the record against reversible error as he is to present his case as forcibly as possible." *(People v Lombard,* 4 AD2d 666, 671.)

The prosecutor's position is that he was merely trying to show why the complainant was reluctant to testify. It could very easily have been shown that this reluctance was the product of fear—a fear of being humiliated—a totally acceptable and understandable emotion for the victim of a rape. In *People v Cancel* (61 AD2d 497, 500) this court held "The District Attorney contends that all of this evidence was presented, not to demonstrate a criminal disposition, but for independent relevant purposes. This argument oversimplifies the reality of what occurred". Obviously, this does not remotely justify that which was actually presented to the jury. An experienced prosecutor (as we have here) could have made an offer of proof, and after consequent redaction of the devastating portion of the complainant's testimony, the relevant part could have been admitted, without error. Having failed to so proceed, the prejudicial effect of the answer, which the District Attorney anticipated, clearly outweighed its probative value.

In summation, the prosecutor compounded the errors herein by commenting on the defendants' failure to testify, an infringement of so fundamental a right as to be preserved for

would not have provided a basis for cross-examination. Cavallerio had pleaded guilty to criminal mischief to cover one of the rape charges against him, and, but for the *Sandoval* ruling, the prosecutor would have been able to show that conviction on cross-examination of Cavallerio.

appellate review even in the absence of exception. *(People v McLucas,* 15 NY2d 167.) The prejudicial remarks on one occasion compared the witnesses who testified to the defendants and reminded the jury "[D]on't forget the defendants". The prosecutor, without abandoning this error laden argument, next noted that the complainant has testified and "she was not the defendant". Subsequently the prosecutor commented on certain knowledge within the exclusive possession of the defendants. This court, in a single witness rape case, noted that such comments "have long been proscribed by decisional law in this State * * * and if they survive appellate scrutiny at all, it is only in those instances where there is 'no reasonable possibility that the error may have contributed to defendant's conviction' * * * In a close case such as this, turning as it did solely on the testimony of the complainant, we cannot conclude that the prosecutor's comments were harmless". *(People v Abdul-Malik,* 61 AD2d 657, 663.)

■ In addition, the prosecutor improperly buttressed the complainant's testimony by referring to her prior sworn testimony before the Grand Jury and at the preliminary hearing. These minutes were not admitted into evidence. Thus, no basis existed for the prosecutor to "testify" that complainant's story was "consistent throughout", and further, "there were no changes throughout the trial and preceding judicial proceedings." The cumulative effect of these errors substantially contributed to defendants' conviction.

■ There are other matters worthy of brief comment. The defendants were entitled to any notes on any interview with a witness, no matter what the form and no matter when made. The court erred in refusing to turn over notes made by an Assistant District Attorney after interviewing the complainant. *(People v Consolazio,* 40 NY2d 446, 453, cert den 433 US 914.)

■ The court in charging intent stated: "Upon the question of intent, you may infer that a person intends that which is natural and necessary and probable consequences of the act done by him and *unless the act is done under circumstances to preclude the existence of such intent, you have a right to find from the results produced an intention to effect (sic)".* (Emphasis added.) This court, in criticizing the italicized portion of this charge, noted that it might be interpreted as shifting the burden of proof to the defendant *(People v Dellipizzi,* 61 AD2d 961; see, also, *Sandstrom v Montana,* 442 US 510).

While this may not be reversible error in some cases, since the instruction was in permissive rather than mandatory language, the intent with which the defendants acted in this case is highly significant, and therefore, this issue takes on added importance. Further in its charge, the court stated: "however, it is possible to demand proof to a *reasonable certainty* and to that degree of proof, the People must be held" (emphasis supplied). This court in, *People v Forest* (50 AD2d 260, 262) held that the use of "reasonable certainty" to be error. Again, in a case where the evidence of guilt is overwhelming, such error may not be reversible when considered in the entire context of the charge but in a close case, such as this, and considering the other errors heretofore mentioned, this error takes on added significance.

■ Accordingly, the judgments of conviction should be reversed on the law and the matter remanded for a new trial.

KUPFERMAN, J. P., BIRNS, MARKEWICH and LYNCH, JJ., concur.

Judgments, Supreme Court, Bronx County, each rendered April 17, 1978, unanimously reversed, on the law, and the matter remanded for a new trial.