**Bobby WASHINGTON, Petitioner,**

v.

**David HARRIS, Superintendent of Green Haven Correctional Facility, Respondent.**

**No. 79 Civ. 3911 (JMC).**

United States District Court, S. D. New York.

Dec. 3, 1980.

The Legal Aid Society, Federal Defender Services Unit, New York City (Barry Bassis, New York City, of counsel), for petitioner.

Mario Merola, Bronx Dist. Atty., Bronx by Allen H. Saperstein, Asst. Dist. Atty., Bronx, for respondent.

## MEMORANDUM AND ORDER

CANNELLA, District Judge:

The amended petition of Bobby Washington for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is granted on the conditions stated in this Memorandum and Order.

1. In his original petition, petitioner claimed that (1) the trial court's erroneous jury instructions on the defense of justification violated his right to due process of law; (2) certain portions of the prosecutor's summation violated his right to counsel since the statements encouraged jurors to draw an adverse inference from the fact that petitioner exercised his right to counsel immediately after his arrest and before he gave a statement to police; (3) petitioner was denied effective assistance of counsel in violation of his sixth amendment right, and (4) section 35.-15(2) of the New York Penal Law violated his rights to due process of law and equal protection. The Court denied the petition for a writ of habeas corpus, finding that (1) petitioner had not exhausted his state remedies with respect to the trial court's instructions to the jury on the defense of justification; (2) the prosecutor's statements during summation, although

## FACTS

Petitioner is currently confined at the Green Haven Correctional Facility, Stormville, New York, pursuant to a judgment convicting him, upon a jury verdict, of murder in the second degree and criminal possession of a weapon in the third and fourth degrees. The facts underlying petitioner's conviction, as summarized in the Court's Memorandum and Order denying his original petition,[1] are set forth below:

At trial, the prosecution presented the testimony of several witnesses and a written statement made by the petitioner several hours after his arrest while represented by counsel, which established the following facts: On June 4, 1973, at approximately 8:15 a. m., the petitioner and his wife were in front of their apartment at 1043 Clay Avenue in the Bronx. The deceased, Peggy Mickens, accompanied by a woman friend, approached and attacked Mrs. Washington with a knife as she was placing trash in the garbage can. Mickens had harassed and assaulted the petitioner and his family for two years prior to this incident, and both Mickens and petitioner had filed criminal complaints against each other in the past. When petitioner, who was in his car, saw the attack, he took a pistol from the glove compartment, and intervened in the struggle. Petitioner fired his gun, but did not know whether he hit Mickens. Mickens then came after him with the

constitutionally defective, were harmless error beyond a reasonable doubt; (3) petitioner was not denied effective assistance of counsel, and (4) section 35.15(2) of the New York Penal Law did not violate petitioner's rights to due process and equal protection. *Washington v. Harris*, 486 F.Supp. 1037 (S.D.N.Y.1980). On March 6, 1980, the Court granted petitioner's application for a certificate of probable cause to appeal. On appeal, petitioner's assigned counsel moved, with respondent's consent, to remand the action to this Court for consideration of an amended petition for a writ of habeas corpus, after determining that an additional ground for habeas relief existed. On June 11, 1980, the Second Circuit Court of Appeals granted petitioner's motion and remanded the action to this Court. *Washington v. Harris*, No. 80–2040 (2d Cir. July 3, 1980).

knife. Petitioner wrestled with Mickens until he succeeded in getting the knife away from her. When petitioner was asked if he stabbed Mrs. Mickens with the knife, he answered "I guess so. I was just afraid." Transcript of proceedings at 202, *People v. Washington*, No. 1999–73 (Sup.Ct. Bronx Co. October 1, 1975) [hereinafter cited as "Tr."].

The medical examiner who performed an autopsy of the deceased testified that she had a bullet wound in the right eye, which had destroyed the eyeball; slash wounds on the face; a deep slash wound on the throat, which had severed the main artery; another deep stab wound into the abdominal cavity, as well as "defensive wounds" on the hands, wrists and knee. Tr. at 132–33. Defensive wounds are recognizable as the result of an assault victim's attempt to ward off blows or grab the attacker's weapon. Tr. at 134. The medical examiner identified the cause of death as multiple stab wounds and the bullet wound to the eye, although he also testified that the bullet wound alone would not have caused the deceased to lose consciousness. Neither the petitioner nor his wife were injured during the struggle.

Alejo Martinez and George Del Valle testified that they saw petitioner grabbing a woman by the arm and stabbing her several times in the neck and face. Tr. at 87, 147. Del Valle testified that when the woman fell to the curb, the man leaned over and stabbed her in the throat. Tr. at 150. The defense attacked the credibility of these witnesses.

At trial, the petitioner was represented by retained counsel, and did not testify or call any witnesses on his behalf. The defense argued that the petitioner's post-arrest statement, which was introduced into evidence during the prosecution's direct case, was the only evidence offered concerning the defense of justification, and was "absolute proof of his innocence." Tr. at 296.

*Washington v. Harris*, 486 F.Supp. 1037, 1039 (S.D.N.Y.1980) (footnotes omitted).

In his instructions to the jury on the issue of intent,[2] the trial judge stated several times, in varying forms, that "a person in-

---

**2.** Intent is an element of three of the four crimes that were submitted to the jury—murder in the second degree, N.Y. Penal Law § 125.25(1) (McKinney 1975), or alternatively manslaughter in the first degree, *id.* § 125.20, and criminal possession of a weapon in the fourth degree, *id.* § 265.01(2) (McKinney 1980). Intent is not an element of the fourth crime charged, criminal possession of a weapon in the third degree. *Id.* § 265.02.

The petitioner objects to the following instructions on the issue of intent. With respect to the intent required for murder, the trial court charged:

On the question of intent, you may infer that a person intends that which is the natural and necessary and probable consequences of the acts performed by him unless the act was done under circumstances to preclude the existence of such intent, you have a right to find from the results produced an intention to effect it.

Tr. at 380. Petitioner contends that the trial court further misled the jury by directing them to consider the wounds inflicted on the deceased in determining whether petitioner acted with the intention to commit murder:

Now, jurors, you will notice that one of the essential elements of the crime of murder is intent and you will recall I have already in-

structed you on the subject of intent, and what the law means by intent.

However, on the subject of intent, I charge you that you may consider the condition of the alleged victim, and the number and type of wounds allegedly inflicted as well as any of the other surrounding circumstances you adduce from the evidence in this case which you determine have been proven by evidence beyond a reasonable doubt.

Tr. at 381–82. The "natural and probable consequences" charge was repeated twice more in much stronger terms. With respect to manslaughter, the trial court charged:

Our law says a person intends that which is the necessary and natural consequence of any act performed by him.

Tr. at 385. On the charge of criminal possession of a weapon in the fourth degree, the trial court again instructed:

You will observe that intent is an essential element of this crime. You will recall my instruction to you on intent; that it is a mental operation that can be proved only by the facts and circumstances surrounding the act; and a person intends that which is the necessary and natural consequences of any act he performs.

Tr. at 388–89.

tends that which is the natural and necessary and probable" consequence of his act. Although petitioner did not object to these instructions at trial, he now claims that the trial court's instructions on intent were constitutionally defective because they in effect created a conclusive presumption of intent or shifted the burden of proof to the defendant on that issue. Respondent answers that the trial court's instructions on intent did not deprive petitioner of due process of law and that, in any event, petitioner waived his constitutional claim by not objecting to the instructions at trial.

## DISCUSSION

■ In contending that petitioner waived his objection to the trial court's instructions on intent by failing to object at trial, respondent relies upon § 470.05(2) of the New York Criminal Procedure Law (McKinney 1971), which provides:

> For purposes of appeal, a question of law with respect to a ruling or instruction of a criminal court during a trial or proceeding is presented when a protest thereto was registered, by the party claiming error at the time of such ruling or instruction or at any subsequent time when the court had an opportunity of effectively changing the same.

Section 470.15(1) of the Criminal Procedure Law, however, has been interpreted to give the Appellate Division power, in its discretion, to consider errors not objected to at trial. *Callahan v. LeFevre*, 605 F.2d 70, 73 n.6 (2d Cir. 1979); *People v. Thomas*, 71 A.D.2d 280, 422 N.Y.S.2d 394, 397 (1st Dep't 1979). Respondent nonetheless contends that when, as here, no objection is made at

trial and the conviction is affirmed by the Appellate Division without opinion, the petitioner has the burden of demonstrating that the Appellate Division exercised its discretion to consider petitioner's constitutional claims rather than affirming the conviction on state procedural grounds. The Second Circuit, however, has indicated that an issue is sufficiently preserved for the purposes of federal habeas corpus review when it is properly raised in the Appellate Division on appeal from the conviction. *Callahan, supra,* 605 F.2d at 73 n.6. Thus, if the Appellate Division has been afforded a "fair opportunity" to consider the same constitutional claims as those advanced in the habeas proceeding, the petitioner will be deemed to have preserved the issues for habeas review and fulfilled his concomitant obligation to exhaust state remedies.

■ The petitioner's brief in the Appellate Division, although not a model of clarity, did afford the Appellate Division a fair opportunity to pass upon his constitutional challenge to the jury instructions on intent. In his brief, petitioner argued, albeit in a footnote:

> The same charge held to be reversible error without objection in [*United States v.*] *Robinson,* [545 F.2d 301 (2d Cir. 1976),] the presumption of intention from natural consequences, was given in this case, and reversal is likewise mandated here for the Constitutional violation of placing a burden of proof on the defendant [Tr. at] 380.

Appellant's Brief at 29 n.*, *People v. Washington*, No. 1999–73 (A.D., 1st Dep't).[3] Thus, the Court concludes that petitioner

---

3. Respondent also contends that petitioner has not exhausted his state remedies on this claim. *First,* respondent argues that petitioner never claimed before the Appellate Division that the challenged instructions created a conclusive presumption of intent. Respondent apparently concedes that the Appellate Division had a fair opportunity to consider petitioner's claim that the challenged instructions shifted the burden of proof to him on the issue of intent. Nevertheless, the Court finds the distinction made by the respondent insignificant because the Appellate Division was apprised of petitioner's claim that the challenged instructions relieved the

State of its burden of proving each element of the crime charged beyond a reasonable doubt.

*Second,* respondent argues that petitioner failed to exhaust his state remedies because he did not seek clarification from the Appellate Division on whether his conviction was affirmed on procedural or constitutional grounds. In *Callahan v. LeFevre, supra,* however, the Second Circuit indicated that such clarification is unnecessary to preserve a claim for habeas review once the state courts have had a fair opportunity to pass on it. Accordingly, this argument is also without merit.

has exhausted his state remedies thereby preserving his present claim for habeas review.

It is undisputed that petitioner's state of mind or intent was an essential element of three of the four crimes that were submitted to the jury.[4] Furthermore, it is axiomatic that the due process clause protects an accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged. *In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). At petitioner's trial, the defense did not dispute that petitioner caused Mickens's death. Rather, the defense relied upon petitioner's post-arrest statement as evidence that petitioner acted in self-defense and had no intent to kill Mickens. The Court must therefore determine whether the jury instructions challenged by petitioner had the effect of relieving the State of its burden of proof on the crucial element of petitioner's intent to commit the crimes charged.

The Supreme Court has stated:

The threshold inquiry in ascertaining the constitutional analysis applicable to this kind of jury instruction is to determine the nature of the presumption it describes. That determination requires careful attention to the words actually spoken to the jury, for whether a defendant has been accorded his constitutional rights depends upon the way in which a reasonable juror could have interpreted the instruction.

*Sandstrom v. Montana,* 442 U.S. 510, 514, 99 S.Ct. 2450, 2454, 61 L.Ed.2d 39 (1979) (citations omitted). Thus, a brief summary of the three categories of presumptions is appropriate. A "conclusive" presumption requires the jury to find an ultimate fact to be true based upon proof of another fact, and even the most persuasive evidence cannot rebut such a presumption. A "mandatory" presumption requires the jury to find an ultimate fact to be true based upon proof of another fact unless they are otherwise persuaded by evidence offered in rebuttal. An "inference," sometimes referred to as a "permissive" presumption, allows, but does not require, the jury to find an

4. The trial court instructed the jury:

In this case, the following crimes will be submitted to you for your consideration.
1. Murder, or in the alternative,
2. Manslaughter in the first degree and,
3. Possession of a weapon, dangerous instrument and appliance as a misdemeanor, to wit, a knife, and
4. Possession of a weapon as a felony, to wit, a pistol.
You will note that the first two crimes, namely murder and manslaughter in the first degree are being submitted to you in the alternative, while the last two crimes, namely, possession of a weapon, dangerous instrument and appliance as a misdemeanor, to wit, a knife, and possession of a weapon as a felony, to wit, a pistol are being submitted independently of the first two crimes charged and independently of each other.

· · · ·

You will note from the instructions I will give you on each of the aforementioned crimes that while intent in one form or another is an essential element in three of these crimes which you will consider, namely, murder, manslaughter in the first degree and possession of a dangerous instrument and appliance as a misdemeanor, to wit, a knife, intent is not an essential element of the fourt [*sic*]

crime charged, namely, possession of a weapon as a felony, to wit, a pistol.
However, I caution you now in your deliberations on the subject of intent, you must keep in mind the following:
1. With respect to the crime of murder, the intent the People must prove by evidence beyond a reasonable doubt is that the defendant intended to cause the death of Peggy Mickens and,
2. With respect to the crime of manslaughter in the first degree, the intent the People must prove by evidence beyond a reasonable doubt is that the defendant intended to cause serious physical injury to Peggy Mickens, which injuries resulted in her death.
3. With respect to the crime of possession of a weapon, dangerous instrument and appliance as a misdemeanor, to wit, a knife, the intent the People must prove by evidence beyond a reasonable doubt is that the defendant intended to use a dangerous instrument, namely, a knife, unlawfully against Peggy Mickens.
Again, I remind you that with respect to the fourth crime charged, namely, possession of a weapon as a felony, to wit, a loaded pistol, intent is not a necessary element of that crime.
Tr. at 376, 378–79.

ultimate fact to be true based upon proof of another fact if upon consideration of all the circumstances revealed by the evidence they are satisfied that the ultimate fact is more likely than not to follow from the fact proved. *See County Court of Ulster County v. Allen,* 442 U.S. 140, 165, 99 S.Ct. 2213, 2228, 60 L.Ed.2d 777 (1979); *McInerney v. Berman,* 473 F.Supp. 187, 188 (D.Mass.1979), *aff'd,* 621 F.2d 20 (1st Cir. 1980).

■ The use of a conclusive or mandatory presumption to establish a necessary element of a crime by proof of another fact violates due process by relieving the prosecution of its burden of proof on that issue or by shifting the burden of proof to the defendant by requiring him to rebut the presumption. *Sandstrom v. Montana, supra,* 442 U.S. at 524, 99 S.Ct. at 2459; *see United States v. United States Gypsum Co.,* 438 U.S. 422, 446, 98 S.Ct. 2864, 2878, 57 L.Ed.2d 854 (1978) (conclusive presumption); *Mullaney v. Wilbur,* 421 U.S. 684, 701, 95 S.Ct. 1881, 1890, 44 L.Ed.2d 508 (1975) (mandatory presumption); *Morissette v. United States,* 342 U.S. 246, 274, 72 S.Ct. 240, 255, 96 L.Ed. 288 (1952) (conclusive presumption). An inference that a necessary element of the crime has been proved from proof of another fact, however, does not offend the requirements of due process if the underlying fact is proven beyond a reasonable doubt and is rationally related to the element of the crime. Under such circumstances, the jury's use of the inference does not relieve the prosecution of its burden of proving each element of the crime charged beyond a reasonable doubt based upon the credible evidence in the record as a whole. *County Court of Ulster County v. Allen, supra,* 442 U.S. at 157, 99 S.Ct. at 2224.

In *Sandstrom,* an instruction that " '[t]he law presumes that a person intends the ordinary consequences of his voluntary acts' " was held to be unconstitutional, despite the state's argument that the instruction merely created a permissive inference, because

> a reasonable jury could well have interpreted the presumption as "conclusive," that is, not technically as a presumption at all, but rather as an irrebuttable direction by the court to find intent once convinced of the facts triggering the presumption. Alternatively, the jury may have interpreted the instruction as a direction to find intent upon proof of the defendant's voluntary actions (and their "ordinary" consequences), unless *the defendant* proved the contrary by some quantum of proof which may well have been considerably greater than "some" evidence—thus effectively shifting the burden of persuasion on the element of intent.

442 U.S. at 517, 99 S.Ct. at 2456; *accord, United States v. Ariza-Ibarra,* 605 F.2d 1216, 1227 (1st Cir. 1979); *Callahan v. Le-Fevre, supra,* 605 F.2d at 73 n.9. Similarly, in *United States v. Robinson,* 545 F.2d 301, 306 (2d Cir. 1976), the Second Circuit Court of Appeals held that the "natural and probable consequences" charge, particularly when it contains the phrase "unless the contrary appears from the evidence," [5] operates as a burden-shifting charge "which has the potential for misleading the jury with respect to the requirement that the government must prove every element of the crime beyond a reasonable doubt." *See United States v. Barash,* 365 F.2d 395, 402–03 (2d Cir. 1966).

Having carefully reviewed the trial court's entire instructions to the jury, as the

---

**5.** In *Robinson, supra,* the trial court instructed the jury:

> "In determining the issue of intent in this case a jury may reasonably infer, as I said before, that a person ordinarily intends the natural and probable consequences of acts knowingly done or knowingly omitted.
>
> So, unless the contrary appears from the evidence, the jury may draw the inference

that the defendant intended all the consequences which one in like circumstances and possessing like knowledge should reasonably have expected to result from any act knowingly done or knowingly omitted by the defendant."

545 F.2d at 305.

Court must in determining the constitutionality of the challenged instructions, *see Cupp v. Naughten*, 414 U.S. 141, 147, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973), the Court concludes that a reasonable juror may well have interpreted the trial court's instructions on the issue of intent as creating either a conclusive or mandatory presumption of intent from proof of the killing itself. Although the trial court first introduced the presumption to the jury by using such permissive language as the jury "may infer" that a person intends that which is the natural and probable consequence of his acts,[6] this language was followed immediately by the phrase "unless the act was done under circumstances to preclude the existence of such intent."[7] Tr. at 385. New York courts have recognized that this language, like the phrase "unless the contrary appears from the evidence" in *Robinson, supra*, might be interpreted as shifting the burden of proof to the defendant. *See People v. Cavallerio*, 71 A.D.2d 338, 344–45, 422 N.Y.S.2d 691, 695 (1st Dep't 1979). Furthermore, the likelihood that the jury would adopt such an erroneous interpreta-

tion was increased when the trial court later instructed the jury, with respect to the manslaughter charge, that "[o]ur law *says* a person intends that which is the necessary and natural consequences of any act performed by him." Tr. at 385 (emphasis added); *see* Tr. at 388–89. In the Court's view, this language is as mandatory in nature as the "law presumes" instruction condemned in *Sandstrom*. Read as a whole, the jury instructions give the impression that the jury was "not told that they had a choice, or that they might infer that conclusion; they were told only that the law presumed it." *Sandstrom v. Montana, supra*, 442 U.S. at 515, 99 S.Ct. at 2454; *accord, Dreske v. Wisconsin Dep't of Health and Social Services*, 483 F.Supp. 783, 787–88 (E.D.Wis. 1980).[8]

■ The misleading effect of these instructions upon the jury was not cured by the other instructions given at trial. Although the trial court on numerous occasions instructed the jury that the prosecution has the burden of proving each element of the crimes charged and disproving the

**6.** Inferences presented to the jury in permissive rather than mandatory terms have generally been upheld. *See United States v. Freeman*, 619 F.2d 1112, 1123 (5th Cir. 1980) (instruction that "'it is reasonable to infer that a person ordinarily intends the natural and probable consequences of his or her knowing acts,'" held to create a permissive inference); *United States v. Ogle*, 613 F.2d 233, 242–43 (10th Cir. 1979) (instruction that "'what a defendant does or fails to do may indicate intent or lack of intent to commit the offense charged, and it is reasonable to infer that a person ordinarily intends the natural and probable consequences of acts knowingly done or knowingly omitted,'" held to create a permissive inference); *Gagne v. Meachum*, 602 F.2d 471, 473 (1st Cir. 1979), *cert. denied*, 444 U.S. 992, 100 S.Ct. 524, 62 L.Ed.2d 422 (1979) (instruction that "'[w]hen the fact of malice [an element of murder under Massachusetts law] is shown there is nothing to rebut the natural presumption of malice[,] for the rational probability is that a man of sound mind intends the probable and natural consequences of his act,'" held to create a permissive inference).

**7.** The respondent argues that this phrase is distinguishable from the "unless the contrary appears from the evidence" charge in *Robinson, supra*. Respondent contends that this lan-

guage simply informed the jury that they could not use the inference that a person intends the natural and probable consequences of his acts if circumstances preclude such intent. Certainly this is one interpretation the jury could have given the instruction. It is not the only interpretation, however. Even if the jury could have interpreted the presumption in a permissible manner, the Court "cannot be certain that this is what they did do." *Sandstrom v. Montana, supra*, 442 U.S. at 526, 99 S.Ct. at 5460.

**8.** The District Court in *Dreske* subsequently stayed, *sua sponte*, its order granting the petition for a writ of habeas corpus in order to give the parties an opportunity to brief the issue of the retroactive application of the Supreme Court's holding in *Sandstrom*. *See Dreske v. Wisconsin Dep't of Health and Social Services*, 486 F.Supp. 504 (E.D.Wis.1980). Although not briefed by the parties in the present action, the Court has considered the issue of retroactivity. To the extent that *Sandstrom* can be interpreted as creating a new rule of constitutional law, which is doubtful since *Sandstrom* merely extends the principles set forth in *In re Winship, supra*, the Court concludes that *Sandstrom*'s holding should be applied retroactively.

defense of justification beyond a reasonable doubt, and that the burden of proof never shifts to the defendant,[9] see Tr. at 347–48, 350, 365–66, 373, 375, 411, the jury could have interpreted the inconsistent instructions as indicating that the presumption was a means by which the prosecution could sustain its burden of proof as to intent. *Sandstrom v. Montana, supra,* 442 U.S. at 518–19 n.7, 99 S.Ct. at 2546 n.7; *United States v. Robinson, supra,* 545 F.2d at 306. Furthermore, the trial court's instructions that the jury could consider the condition of the alleged victim when determining the issue of intent, Tr. at 381–82, although a correct statement of the law, tended to reinforce the presumption that the petitioner intended the natural and probable consequences of his acts, thereby increasing the likelihood that the jury would equate proof that petitioner caused Mickens's death with proof that petitioner intended to cause her death beyond a reasonable doubt. Because the challenged instructions created the possibility that the jury would find intent from proof of the killing, unless rebutted by petitioner, and that therefore the instructions may have relieved the prosecution of its burden of proving each element of the crimes charged beyond a reasonable doubt, the Court concludes that the jury instructions violated petitioner's right to due process of law.

Respondent next argues that even if the jury relied upon unconstitutional instructions, this error was harmless error beyond a reasonable doubt. *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). Respondent contends that intent was not a crucial issue at trial because the defense did not argue that petitioner did not intend to kill Mickens but rather that the killing was justified since he acted in self-defense. While it may be true that petitioner relied upon a defense of self-defense, that does not mean he conceded the issue of intent. To the contrary, the defense relied upon petitioner's post-arrest statement wherein he claimed that "I did not intend to kill this woman but she just wouldn't stop." Tr. at 200, *accord, id.* at 208. Moreover, although the trial court properly recognized that a reasonable view of the evidence justified the submission of manslaughter in the first degree as a lesser included offense, *see People v. Thomas,* 71 A.D.2d 280, 284, 422 N.Y.S.2d 394, 397 (1st Dep't 1979) ("Although the extent of the wounds ... militate against a finding that defendant acted with any intent other than to kill, the trial court believed the issue was open to different conclusions."), the possible interpretation given to the challenged instructions removed from the jury the only issue which distinguished murder in the second degree from manslaughter in the first degree. The Court therefore rejects respondent's contention that petitioner's intent during the incident was not a crucial issue at trial. *See Baker v. Muncy,* 619

9. The Second Circuit Court of Appeals has indicated that additional instructions which clearly allocate the burden of proof alleviate the danger of constitutional error inherent in the "natural and probable consequences" charge, when the challenged instruction does not contain the phrase "unless the contrary appears from the evidence." *United States v. Robinson, supra,* 545 F.2d at 306 n.7 (citing *United States v. Erb,* 543 F.2d 438, 447 (2d Cir.), *cert. denied,* 429 U.S. 981, 97 S.Ct. 493, 50 L.Ed.2d 590 (1976)). In the present case, however, an equally aggravating phrase was used by the trial court—"unless the act was done under circumstances to preclude the existence of such intent." *Cf. McInerney v. Berman, supra,* 473 F.Supp. at 190. In *McInerney,* the district court held that additional instructions ensured that the jury understood the permissive nature of the charge that the jury could consider "circumstances which will rebut the presumption of malice and reduce the unlawful character of that killing from murder to manslaughter" and that malice may be inferred "unless by the circumstances the jury considers that it has been disproved." The district court recognized that "[t]hese phrases, standing alone, would ... be very likely to leave a jury with the impression that if an unlawful and intentional killing (or the use of a dangerous weapon) were proved, the inference of malice would stand unless overcome by proof at some quantifiable level." *Id.* In the present case, on the contrary, the trial court's later instructions that "the law says" a person intends the natural and probable consequences of his acts, aggravated rather than cured the error inherent in its instructions.

F.2d 327, 331 (4th Cir. 1980); *contra, Mason v. Balkcom*, 487 F.Supp. 554, 559 (M.D.Ga. 1980); *cf. United States ex rel. Collins v. Crist*, 473 F.Supp. 1354, 1357–58 (D.Mont. 1979).[10] Since the jury's verdict of guilty on the counts in which intent was a crucial element of the crime—murder in the second degree and criminal possession of the knife—could have resulted from the unconstitutional instructions, the Court concludes that the error was not harmless beyond a reasonable doubt.

## CONCLUSION

Accordingly, the amended petition for a writ of habeas corpus is granted, 28 U.S.C. § 2254. Respondent is hereby ORDERED to release petitioner from custody following the execution of his sentence for possession of a dangerous weapon in the third degree, unless he is retried within 60 days of the entry of this Memorandum and Order or an appeal is taken herefrom within ten days of entry.

SO ORDERED.

---

**10.** In *Collins*, the district court held that the petitioner was not entitled to habeas relief when the "natural and probable consequences" charge was delivered during a state homicide trial, but the remainder of the charge clearly placed the burden of proof on the state and the defense of self-defense was advanced. Although the district court did not elaborate on the facts underlying that conviction, it concluded that the issue of intent was of little relevance. The petitioner had apparently conceded that he intended to kill the victim and argued solely that the killing was involuntary because he was forced to act in self-defense. In the present case, however, petitioner did not concede that he intended to kill Mickens, which is similar to a situation discussed by the district court in dicta: "[i]f the defendant claimed that he voluntarily fired the rifle at the victim, but without intending to kill him, this error might be more prejudicial since the instruction would then create a presumption that he actually intended to kill." *Collins, supra,* 473 F.Supp. at 1358.