Vito MATARESE, Petitioner,

v.

Eugene LeFEVRE, Superintendent, Clinton Correctional Facility, and Robert Abrams, Attorney General, State of New York, Respondents.

No. 80 C 2253.

United States District Court,
E. D. New York.

April 23, 1981.

Vito Matarese, pro se.

Eugene Gold, Dist. Atty., Kings County, Brooklyn, N. Y. by Salvatore S. Russo, Asst. Dist. Atty., Brooklyn, N. Y., for respondents.

---

1. Although petitioner also contends that N.Y. Pen. Law § 70.10 was unconstitutionally applied to him, the Court sees no reason in this

MEMORANDUM AND ORDER

NEAHER, District Judge.

Petitioner was convicted by a jury in Supreme Court, Kings County, of robbery and sentenced to a term of imprisonment of 15 years to life pursuant to New York's persistent felony offender statute, N.Y.Pen. Law § 70.10. Claiming that the instructions given his jury with regard to the issue of intent violated his constitutional rights under *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979), petitioner has applied to this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In addition, petitioner claims that he was improperly sentenced as a persistent felony offender because he elected to stand trial rather than plead guilty.[1] For the reasons which follow, the petition is denied.

Petitioner had been drinking in a bar in Brooklyn, New York, on the afternoon of October 12, 1976. He was observed walking around the bar, from the front where he stood looking out the window to the back of the barroom near the telephone. He became involved in an altercation with one Clifford Ely, who either fell or was knocked to the floor by petitioner. At that point, Louis Schobel, a friend of Ely's, came over to see what was happening. After petitioner ordered him to go into the bathroom, Schobel tried to strike petitioner. Petitioner then lifted up his coat, exposed what appeared to be a gun, and ordered Schobel, another patron and the bartender into the bathroom. An off-duty policeman entered the bar as the others were walking towards the bathroom and petitioner grabbed his arm and commanded that he follow the others. When all were in the bathroom, petitioner told them not to come out or they would be shot. He then took $140 from the bar's cash register and fled.

Following petitioner's conviction of robbery in the third degree, a hearing was conducted into his fairly extensive prior criminal record and other circumstances rel-

---

case to warrant treating this claim as a distinct issue.

ative to the appropriateness of his sentence as a persistent felony offender under N.Y. Pen. Law § 70.10. On appeal to the Appellate Division, Second Department, petitioner's conviction and sentence were affirmed without opinion, *People v. Matarese*, 74 A.D.2d 740, 424 N.Y.S.2d 968 (App.Div. 2d Dept. 1980), and leave to appeal to the New York Court of Appeals was denied. 50 N.Y.2d 846, 430 N.Y.S.2d 1032, 407 N.E.2d 1360 (1980). Since both of the grounds upon which petitioner bases the instant application were raised on his direct appeals, he has exhausted his available State remedies. *Picard v. O'Connor*, 404 U.S. 270, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971); *Johnson v. Metz*, 609 F.2d 1052 (2d Cir. 1979).

At trial, the court's charge to the jury contained the following language:

"It is a fundamental rule in evidence that a person is presumed to intend the natural consequences of his act, unless the act was done under circumstances or conditions which preclude the existence of such intent." Trial Transcript pp. 179–80.

It appears that petitioner's trial counsel failed to object to that instruction of which he now complains. The State contends that this default under New York's contemporaneous objection rule, N.Y.Crim.Proc.Law § 470.05(2), see *People v. Robinson*, 36 N.Y.2d 224, 367 N.Y.S.2d 208, 326 N.E.2d 784 (1975), constitutes an adequate and independent State ground that bars review of this claim on a federal habeas petition. *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). Petitioner's brief to the Appellate Division, however, clearly presented the *Sandstrom* issue in federal constitutional terms. If the State court chose to ignore the procedural default and dispose of the appeal on its merits, then "a federal [habeas] court implies no disrespect for the State by entertaining the claim." *Ulster County Court v. Allen*, 442 U.S. 140, 154, 99 S.Ct. 2213, 2223, 60 L.Ed.2d 777 (1979). On the other hand, if petition-

er's appeal was rejected due to an invocation of the State procedural bar, in the absence of "cause" for the default,[2] *Wainwright* precludes this Court from proceeding to the merits of the waived claim.

The unique circumstances of this case arise out of the fact that neither the Appellate Division, in affirming, nor the Court of Appeals, in denying leave to appeal, did so by opinion expressing its rationale. Nevertheless,

"the absence of express reliance upon procedural grounds is not determinative of the question of federal habeas review.... Instead, federal courts applying *Wainwright* have attempted to determine, on a *case by case basis*, whether state procedural bars were invoked by the state courts *or whether the merits of the claim remain open for federal habeas review....* The cases suggest certain factors which may be helpful in determining whether a procedural default occurred: whether the federal claim was properly presented to the state courts, *whether the prosecution argued the procedural default* in the state courts, and, of course, whether the state court opinions suggest reliance upon procedural grounds or a determination of the merits. [Citation omitted.]" *Grutolla v. Hammock*, 639 F.2d 922, 929 (2d Cir. 1981) (emphasis supplied).

In the case at bar, since the question whether the Appellate Division reached the merits in affirming without opinion presents an issue of State law, see *Wainwright v. Sykes, supra*, 433 U.S. at 85–86, 97 S.Ct. at 2505–06, it is critical to note that petitioner's appeal was argued and decided *after* the Appellate Division decision but *before* the Court of Appeals decision in the case of *People v. Thomas*, 71 A.D.2d 280, 422 N.Y.S.2d 394 (App.Div. 1st Dept. 1979), *rev'd*, 50 N.Y.2d 467, 429 N.Y.S.2d 584, 407 N.E.2d 430 (1980).

---

**2.** Since the jury instruction found impermissible in *Sandstrom* had been disapproved by the New York courts for more than a century, *People v. Thomas*, 50 N.Y.2d 467, 429 N.Y.S.2d 584, 587, 407 N.E.2d 430 (1980), it is doubtful that petitioner could show "cause" for his failure to comply with New York's contemporaneous objection rule. *Taylor v. Harris*, 640 F.2d 1 (2d Cir., 1981).

In *Thomas*, the First Department had relieved the appellant of a conceded failure to object contemporaneously to a *Sandstrom* charge by invoking a New York rule that no trial objection is necessary to preserve for appellate review a point of law arising out of a trial procedure at basic variance with constitutional mandates. *People v. Thomas, supra*, 422 N.Y.S.2d at 397. See *People v. Patterson*, 39 N.Y.2d 288, 383 N.Y.S.2d 573, 347 N.E.2d 898 (1976), *aff'd sub nom., Patterson v. New York*, 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977). The Court of Appeals reversed, holding that, notwithstanding *Sandstrom*, the "narrow exception" of *Patterson* does not excuse the failure to object to a charge long disapproved by the courts of New York. *People v. Thomas, supra*, 429 N.Y.S.2d at 587, 407 N.E.2d 430.

At the time petitioner's appeal to the Second Department was briefed and argued, therefore, the First Department had within weeks announced a rule that would have allowed petitioner to appeal a point based on the *Sandstrom* decision rendered only months earlier. Moreover, rather than press the procedural bar, the State brief to the Appellate Division contained a full discussion of the *Sandstrom* issue on its merits and made only the following footnote reference to the question whether the point had been preserved for appeal:

> "No objection to the court's charge or supplemental charge was made by appellant. However, we do not believe that this omission precludes review of the charge as a question of law. (*People v. Elery Thomas*, 71 App.Div.2d 280, 422 N.Y.S.2d 394 (1st Dept.), NYLJ, 12/24/79, p. 1, col. 6, at p. 24, col. 2 (citing cases))."
> Respondent's Brief to Appellate Division at 21.

In the light of this concession, it would seem unlikely that the Second Department chose to rely upon petitioner's procedural default and, without opinion expressing its

reasoning, thereby establish a rule conflicting with that recently announced by the First Department.[3] See *Alburquerque v. Bara*, 628 F.2d 767, 772 (2d Cir. 1980) (State court rejection without discussion of habeas petitioner's claim held not affirmance on procedural grounds, noting that "no reasoned, factually substantiated opinion has been rendered by the State courts holding that Alburquerque did not meet the procedural requirements" necessary to preserve claim asserted on habeas petition). See also *Ulster County Court v. Allen, supra*, 442 U.S. at 152, 99 S.Ct. at 2222 ("the prosecution never argued to any state court that a procedural default had occurred. This omission surely suggests that the New York courts were not thinking in procedural terms when they decided the issue.")

■ The State argues that the subsequent reversal of the First Department decision in *Thomas* vitiates any effect that its concession may have upon the issue of procedural default in the State courts. The question under *Wainwright*, however, is not whether the State courts could today relieve an appellant in petitioner's position of his default, nor whether the Second Department was correct in so doing at the time. Rather, *Wainwright* requires a "case by case" inquiry into whether, in fact, the State appellate courts chose to reach the merits of a claim notwithstanding a procedural default. *Grutolla v. Hammock, supra*. In petitioner's case, this Court finds that this occurred and, accordingly, will reach the merits of his habeas claim under *Sandstrom*.

The Due Process Clause "protects the accused against conviction except upon proof [by the State] beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 1073, 25 L.Ed.2d 368 (1970); accord, *Patterson v. New York, supra*, 432 U.S. at 210, 97 S.Ct.

---

**3.** In addition, these unique circumstances distinguish this case from *Taylor v. Harris, supra*, 640 F.2d at 2 slip op. at 1162 n.3, where the Court of Appeals, it may be noted, declined the opportunity to declare that "in the absence of

explanation, state court denial of post-conviction relief always implies that the merits of a claim were not reached because of a procedural default."

at 2327. In *Sandstrom*, the Supreme Court concluded that an instruction regarding intent was constitutionally flawed if a reasonable juror could interpret it as containing either a mandatory presumption or one that shifted to the defense the burden of persuasion on the issue of intent. 442 U.S. at 514–19, 99 S.Ct. at 2460. On the other hand, a charge that has "merely described a permissive inference," 442 U.S. at 527, 99 S.Ct. at 2461 (Rehnquist, J., concurring),

> "leaves the trier of fact free to credit or reject the inference and does not shift the burden of proof, [and therefore] it affects the 'beyond a reasonable doubt standard' only if, under the facts of the case, there is no rational way the trier could make the connection permitted by the inference." *Ulster County Court v. Allen*, 442 U.S. at 157, 99 S.Ct. at 2224.

■ Additionally, once a presumption has been determined to be merely permissive, a defendant's right to have the burden of proving every element beyond a reasonable doubt placed upon the prosecution will not be violated "if there is ample evidence in the record other than the presumption to support a conviction." *Ulster County Court v. Allen, supra*, 442 U.S. at 160, 99 S.Ct. at 2226. Finally, in the face of a constitutional challenge, "a single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge." *Cupp v. Naughten*, 414 U.S. 141, 147, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973).

■ With these principles in mind, the Court is of opinion that petitioner's rights were not violated by the language of presumption included in part of the instructions given his jury. The portion of the charge relating to intent reads as follows:

> "I charge you that intent is an essential element in every crime. Intent is the operation of the mind whereby a person aims to obtain the desired natural consequences or effects of his act. It is a mental operation that cannot be photographed. It is silent, secret and invisible to the human eye. The intent of a person may, however, be ascertained from his conduct, his speech or from a combination

of both. Generally a man's acts and outward manifestations reveal an expression of his mind. It is not always by words alone that a man expresses his intention and I am sure that you have heard the old adage that actions speak louder than words.

> "It is a fundamental rule in evidence that a person is presumed to intend the natural consequences of his act, unless the act was done under circumstances or conditions which preclude the existence of such intent. *If you find that the defendant committed the act charged, then you must decide whether or not from all of the established facts, speech, conduct and actions of the defendant, he intended the crime.*

> "Under the Penal Law, intent is defined as follows: 'A person acts intentionally with respect to a result or to conduct described by a statute defining an offense when his conscious objective is to cause such result or to engage in such conduct.'

> "As I have just advised you, in order to find the defendant guilty of the crimes charged in the indictment, *the People must prove his guilt beyond a reasonable doubt as to each essential element of the crime and one of the essential elements is intent.*" Trial Transcript at pp. 179–80 (emphasis supplied).

It is the Court's view that, considering the language of presumption in the context of the overall charge, a reasonable juror could not interpret the challenged portion as anything other than a permissible inference. In the light of the trial court's reiteration of the principles that it was the jury's function to decide the issue of intent, and that intent is an essential element that the prosecution had to prove beyond a reasonable doubt, it cannot be said that a mandatory or burden-shifting presumption was imposed upon petitioner's jurors. See *Robinson v. McClay*, 79 Civ. 2082 (S.D.N.Y.), aff'd mem., 633 F.2d 206 (2d Cir. 1980).

Moreover, petitioner's jury heard ample evidence from which it could base a finding of intent to commit robbery. The jury was

presented with evidence of petitioner's aggressive manner in the bar on the day of the robbery, his display of the gun and its threatening use to herd those in the bar into the bathroom, and his prompt theft of the money and escape. It is abundantly clear that the jury was offered a sufficient basis for the performance of its classic function of determining the issue of intent from all the facts and circumstances in evidence.

Turning finally to petitioner's attack on his sentence, he alleges that in exchange for a plea of guilty he was "offered" a term of 4–½ to 9 years, but was told that if he chose to stand trial and was convicted, the prosecutor would press vigorously for a persistent felony offender sentence under N.Y. Pen. Law § 70.10. It is petitioner's claim that his sentence of 15 years to life was sought and imposed in "reprisal" for his exercise of his right to a jury trial.

Since petitioner does not contest his eligibility for sentence under the enhancement statute, however—conceding the validity of his numerous prior felony convictions—it is clear that the prosecutor was engaged in permissible plea bargaining tactics. *Corbitt v. New Jersey*, 439 U.S. 212, 219, 99 S.Ct. 492, 497, 58 L.Ed.2d 466 (1978). See *Bordenkircher v. Hayes*, 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978).

Rather than support an inference of "vindictiveness" not otherwise indicated, the mere fact that the sentence "offered" was less than that ultimately imposed after a full hearing reveals no more than the "difficult choices" with which the State could constitutionally confront petitioner. *Chaffin v. Stynchcombe*, 412 U.S. 17, 31, 93 S.Ct. 1977, at 1985, 36 L.Ed.2d 714 (1973). See *U.S. ex rel. McGrath v. LaVallee*, 348 F.2d 373 (2d Cir. 1965), *cert. denied*, 383 U.S. 952, 86 S.Ct. 1214, 16 L.Ed.2d 214 (1966). The Supreme Court has on several occasions rejected the contention that the imposition of such choices on defendants facing trial unconstitutionally burdens Sixth Amendment rights, and that Court's reasoning is dispositive of petitioner's claim. As the Court has said, there is no constitutional bar in presenting

"the defendant with the unpleasant alternatives of foregoing trial or facing charges on which he was plainly subject to prosecution....

"While confronting a defendant with the risk of more severe punishment clearly may have a 'discouraging effect on the defendant's assertion of his trial rights, the imposition of these difficult choices [is] an inevitable'—and permissible—'attribute of any legitimate system which tolerates and encourages the negotiation of pleas.' *Chaffin v. Stynchcombe*, [412 U.S. 17] *supra*, at 31 (93 S.Ct. 1977 at 1985, 36 L.Ed.2d 714). It follows that, by tolerating and encouraging the negotiation of pleas, this Court has necessarily accepted as constitutionally legitimate the simple reality that the prosecutor's interest at the bargaining table is to persuade the defendant to forego his right to plead not guilty." *Bordenkircher v. Hayes, supra*, 434 U.S. at 364–65, 98 S.Ct. at 668–69.

Accordingly, the petition is denied.

SO ORDERED.