**Glenn CHARLES, Petitioner-Appellant,**

v.

**Dale E. FOLTZ, Warden, State Prison of Southern Michigan, Respondent-Appellee.**

No. 83–1595.

United States Court of Appeals, Sixth Circuit.

Argued April 19, 1984.

Decided Aug. 3, 1984.

Arthur J. Tarnow, argued, Detroit, Mich., for petitioner-appellant.

Frank J. Kelley, Atty. Gen. of Michigan, Thomas A. Kulick, Asst. Atty. Gen., argued, Lansing, Mich., for respondent-appellee.

Before KEITH and MARTIN, Circuit Judges, and HILLMAN, District Judge.*

KEITH, Circuit Judge.

Appellant, Glenn Charles, appeals from a decision denying his petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Charles was convicted by a jury on October 9, 1972 of the first degree murder of Theodore Ziefle. He is currently serving a life sentence on this charge at the state prison in Jackson, Michigan.

This is the second time that this case has come before our court.[1] The appellant initiated a new round of post-conviction proceedings in the state courts, raising for the first time the issues which are the subject of the instant petition. The trial court denied the appellant's application for leave to file for a delayed motion for new trial. His application for delayed appeal was denied by the Michigan Court of Appeals in an unpublished order. *People v. Ferrazza,* 406 Mich. 929 (1979). The Michigan Supreme Court denied leave to appeal. *People v. Charles,* 414 Mich. 895 (1982) (Kavanaugh and Levin, JJ., dissenting). Appellant then filed the instant petition for habeas corpus relief, which the district court denied on July 27, 1983. This appeal fol-

---

* Honorable Douglas W. Hillman, United States District Court for the Western District of Michigan, sitting by designation.

**1.** Charles' first petition for writ of habeas corpus alleged the following grounds: (1) prosecutorial use of the appellant's post-arrest "silence" in violation of *Doyle v. Ohio,* 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976); (2) repeated prosecutorial misconduct, and; (3) legally insufficient evidence of premeditation to support a verdict of first degree murder. This petition was denied on December 26, 1978. Charles appealed the judgment, and this court reversed, finding a violation of appellant's due process rights pursuant to *Doyle v. Ohio, supra, Charles v. Anderson,* 610 F.2d 417 (6th Cir.1979). This decision was reversed by the Supreme Court in *Anderson v. Charles,* 447 U.S. 404, 100 S.Ct. 2180, 65 L.Ed.2d 222 (1980), with the judgment of the district court denying the writ, being affirmed.

lowed. For the reasons stated below, we affirm the decision of the district court.

## I.

### Facts

This case involves a heinous offense. On July 26, 1971, the body of Theodore Ziefle was discovered in the foyer of his home by his half-brother and members of the Ann Arbor, Michigan police department. The body, clad only in a pair of trousers, was found at the foot of the stairs leading to the second floor. His head was badly battered, and he was lying on his back in a pool of blood. A lamp, from which the electrical cord had been removed, was near the body. Also, near the body were parts of a wooden clothes hanger. A part of the wooden hanger was used with the electrical cord as a tourniquet, and was wrapped and knotted around the decedent's neck.

A search of the house indicated that the bedroom was in disarray, and a collection of silver coins valued at least $1,000.00 was missing from a closet. Five bank passbooks and an old style camera were also taken. The decedent's automobile, a 1965 Buick Skylark, was missing from the garage.

Medical examination of the body disclosed that Mr. Ziefle had died on July 24 or 25, 1971. Death was caused by strangulation resulting from the knotting and twisting of the electrical cord around the decedent's neck so tightly that it was buried in the layers of skin which were swollen and discolored. Clotted blood and mucous material filled the mouth and nasal passages, and the decedent's tongue was engorged and protrouding. A bone located in the throat just above the voice box was fractured in three places. The body showed evidence of a severe beating including abrasions and contusions around the eyes and nose, and an area of thickening and swelling in the back of the head.

On July 30, 1971, two Grand Rapids police officers on patrol noticed a 1965 Buick which conformed to the description sent out by the Ann Arbor police department.

After a chase by automobile and on foot they apprehended the driver, who was later identified as the appellant.

Two women were in the car with the appellant when he was arrested. The women had met appellant in a Grand Rapids park. The appellant allegedly told a number of people in the park that he was driving a "hot car", and that its owner was dead. He went on to inform them that he murdered a man in Ann Arbor, took his car, and that the man was a sexual deviate. He explained how long it takes to strangle a person, boasting that his hands were deadly weapons, and listing the items, including old silver coins, that he had stolen. Some of the items were given to the women by the appellant and later were identified as having belonged to the decedent. There were no witnesses to the murder. The only evidence linking Charles to the murder was his possession of Ziefle's car, personal possessions, and the alleged statements made regarding his hands being deadly weapons. A jury found the appellant guilty of first degree murder and he was sentenced to life imprisonment.

## II.

### Due Process Issues

#### A. Use of Prior Uncounselled Convictions

■ Our standard of review of this matter is whether the decision of the district court was supported by the weight of the evidence and, thus not clearly erroneous.

The appellant first asserts that his due process rights were violated by the use of two uncounselled misdemeanor convictions to impeach his credibility. We find this assertion unpersuasive.

During the trial, the prosecutor cross-examined the appellant concerning three prior convictions: (1) a 1965 conviction in Florida for assault; (2) a 1969 conviction in Virginia for petty larceny; and (3) a 1970 conviction in Wyoming, Michigan for larceny under $100. The appellant asserts that he was not represented by counsel in the proceedings which led to the second and third

convictions. Appellant therefore argues, relying on *Loper v. Beto,* 405 U.S. 473, 92 S.Ct. 1014, 31 L.Ed.2d 374 (1972) that the use of those two convictions for impeachment purposes violated his due process rights.

In *Loper,* which involved a 1947 rape trial, the prosecutor was permitted to interrogate the petitioner about his previous criminal record for the purpose of impeaching his credibility. Petitioner admitted four previous felony convictions during the 1931–1940 period. He was found guilty by the jury and was sentenced to a term of fifty years. He filed a habeas petition asserting that the previous convictions were constitutionally invalid under *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963) because he was denied assistance of counsel. The district court denied relief (unreported memorandum and order) and the Court of Appeals affirmed. *Loper v. Beto,* 440 F.2d 934 (5th Cir.1971). The Supreme Court reversed. It found that the use of prior convictions, to impeach a defendant's credibility, which were constitutionally invalid under *Gideon,* deprived the defendant of due process of law. *Loper,* 405 U.S. at 480–83, 92 S.Ct. at 1018–19.

■ However, subsequent decisions by the Supreme Court in *Scott v. Illinois,* 440 U.S. 367, 99 S.Ct. 1158, 59 L.Ed.2d 383 (1979), and *Argersinger v. Hamlin,* 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972), have established that the Sixth and Fourteenth Amendment right to counsel extends only to those misdemeanor prosecutions where the defendant may actually be incarcerated. It can be concluded therefore, that pursuant to *Scott, supra,* and *Argersinger, supra,* a misdemeanor conviction without counsel is constitutionally valid where the defendant has not been incarcerated. Furthermore, evidence of prior uncounselled misdemeanor convictions for which imprisonment was not imposed, may be used for impeachment purposes. *Wilson v. Estelle,* 625 F.2d 1158, 1159 (5th Cir.1980).

■ In the instant case, the appellant was cross-examined regarding the 1969 and 1970 convictions. The 1969 conviction was for petty larceny. This was a misdemeanor, the appellant had no counsel, and he was not incarcerated. This conviction was not void pursuant to *Gideon,* and therefore could be used to impeach the credibility of the appellant. We therefore conclude that the use of the uncounselled misdemeanor for impeachment purposes did not violate the appellant's due process rights.

■ The appellant has also failed to demonstrate that his 1970 conviction for larceny by conversion was constitutionally invalid. Appellant has submitted documents which indicate that he was not represented by counsel and that a jail term of thirty days was imposed. However, he did not submit any evidence that he was denied his Sixth Amendment right to counsel. It is entirely possible that the appellant validly waived his right to counsel in those proceedings. As the district court noted:

> [t]he bare allegation to the contrary in the Petitioner's Brief (Brief, page 8) unsupported even by an affidavit signed by the Petitioner, does not establish that the conviction was void for lack of counsel. (Footnote omitted).

*Charles v. Anderson,* No. 82–73619, slip op. at 10 (E.D.Mich. July 27, 1983).

■ Moreover, the district court found that even assuming there was error which reached a constitutional level, it was beyond a reasonable doubt that such error was harmless. The Supreme Court enunciated the standard for harmless error in *Fahy v. Connecticut,* 375 U.S. 85, 86–87, 84 S.Ct. 229, 230–31, 11 L.Ed.2d 171 (1963). The Court stated that in determining harmless error "the question is whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction." *See Chapman v. California,* 386 U.S. 18, 25, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967). The possibility that the admission of the prior misdemeanor convictions contributed to the conviction in this case is *de minimus.*

At trial, the record indicates that the appellant testified to at least six prior convictions. These included:

1) a 1965 petty larceny conviction in Florida;

2) a 1966 conviction of larceny of a motor vehicle in Florida;

3) a 1968 conviction for being a disorderly person and making an annoying phone call;

4) a 1970 conviction for escaping arrest on a highway in Virginia;

5) a 1970 conviction for petty larceny in Michigan; and

6) a 1970 conviction for carrying a concealed weapon.

With the exception of the 1970 larceny conviction, which, as noted above was also raised by the prosecutor on cross-examination, none of these prior convictions has been challenged on Sixth Amendment grounds in either the state appellate or federal habeas corpus proceedings concerning the appellant's murder conviction. Given these facts, it is clear that apart from the two convictions elicited in cross-examination, the jury was apprised of at least six additional convictions. It is therefore beyond a reasonable doubt that the two convictions elicited during cross-examination were harmless error. *Jones v. Estelle*, 622 F.2d 124, 126 (5th Cir.), *cert. denied*, 449 U.S. 996, 101 S.Ct. 537, 66 L.Ed.2d 295 (1980); *Subilosky v. Moore*, 443 F.2d 334 (1st Cir.1971). We, therefore, find that the district court properly ruled that the use of the uncounselled misdemeanors constituted harmless error.

**B. Shifting the Burden of Proof**

The appellant secondly asserts that he was denied due process because the trial court shifted the burden of proof on the issue of malice. At the conclusion of the presentation of evidence, the trial court instructed the jury on murder and manslaughter stating "a man kills another suddenly and without provocation or justification, the law implies malice." (T.521) According to the appellant, this instruction unconstitutionally shifted the burden of

proof on the issue of malice, an essential element of the crime of murder. Appellant bases this assertion on *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979); and *Harless v. Anderson*, 664 F.2d 610 (6th Cir.), *vacated and remanded on other grounds*, 459 U.S. 4, 103 S.Ct. 276, 74 L.Ed.2d 3 (1982). The appellant further contends that the *Sandstrom* error was exacerbated by another instruction on credibility of witnesses. He asserts that this instruction by the trial judge suggested that a defendant's testimony must "outweigh" that offered by the prosecution in order to justify an acquittal.

In *Sandstrom, supra*, the petitioner was charged with "deliberate homicide" under a Montana statute. At trial, he argued that although he killed the victim, he did not do so purposely, and therefore, was not guilty of deliberate homicide. The trial court instructed the jury that "the law presumes that a person intends the ordinary consequences of his voluntary acts." The petitioner objected on the grounds that such an instruction had the effect of shifting the burden of proof on the issue of purpose or knowledge. The jury found petitioner guilty and the Montana Supreme Court affirmed. The United States Supreme Court reversed, holding that "the jury may have interpreted the challenged presumption as conclusive ... or as shifting the burden of persuasion ... and either interpretation would have violated the Fourteenth Amendment's requirement that the State prove every element of a criminal offense beyond a reasonable doubt. The instruction was therefore unconstitutional." *Sandstrom*, 442 U.S. at 514–27, 99 S.Ct. at 2454–61. In *People v. Richardson*, 409 Mich. 126, 143–44, 293 N.W.2d 332, 340 (1980), the Michigan Supreme Court ruled on a jury instruction which was similar to the one in the instant case. The court stated:

[t]he portion of the instruction which stated that the *law implies malice* "from the unprovoked, unjustifiable or inexcusable killing" or when "a man kills another suddenly and without provoca-

tion" had the effect of withdrawing from the jury the essential factual issue of the existence of malice. The law, of course, does not imply malice from a sudden and unprovoked killing, and it was error to so instruct. The necessary factual element of malice may be permissibly inferred from the facts and circumstances of the killing, but it can never be *established as a matter of law* by proof of other facts. *People v. Richardson*, 409 Mich. 126, 143–44 [293 N.W.2d 332] (1980) (emphasis supplied.)

■ The due process clause of the Fourteenth Amendment mandates that the state prove the existence of every element of a criminal offense beyond a reasonable doubt. *In Re: Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). The Supreme Court has also held that the charge shall not instruct the jury conclusively or rebuttably to presume the presence of an element of a crime; to do so relieves the state's burden of proving guilt beyond a reasonable doubt. *Sandstrom, supra*. This test is whether any "reasonable juror could have given the presumption conclusive or persuasion—shifting effect...." *Engle v. Koehler*, 707 F.2d 241, 244 (6th Cir.), *aff'd*, —— U.S. ——, 104 S.Ct. 1673, 80 L.Ed.2d 1 (1984). In the instant case, the jury instruction was unconstitutional. The trial court instructed the jury that when "a man kills another suddenly and without provocation, the law implies malice." The instruction could have been interpreted by the jurors as enunciating a presumption which shifted to the appellant the burden of proving the absence of malice and intent. Pursuant to *Sandstrom, supra*, such burden shifting presumptions are invalid.

The district court assumed *arguendo* that constitutional error had occurred in the instruction to the jury. However, it found such error to be harmless beyond a reasonable doubt. We agree.

■ A *Sandstrom* instruction can be deemed "harmless" only if no rational juror could have concluded from the evidence of record that the perpetrator of the crime lacked the requisite intent. *Conway v. Anderson*, 698 F.2d 282, 285 (6th Cir.), *cert. denied*, —— U.S. ——, 103 S.Ct. 3092, 77 L.Ed.2d 1352 (1983).[2] In the instant case, the facts of the murder clearly indicate beyond a reasonable doubt that the decedent had been intentionally and maliciously murdered. As Judge Churchill so aptly stated:

> [i]ntent and malice were never in dispute at the petitioner's trial. As defense counsel noted, there was no question that the victim had been murdered; the sole issue was who killed him. Furthermore, an inference of malice was inescapable from the brutal and systematic nature of the killing. The evidence indicated that the perpetrator struck the victim repeatedly on the head and face, ripped or cut a cord from a lamp, knotted it in two places, and then, using a piece of wood for additional leverage, strangled the victim so forcefully that bones in the neck were broken and the cord was deeply embedded in the skin. On this record, no rational juror could have concluded that the perpetrator of the crime acted without malice as the term is defined under Michigan law. See *Conway v. Anderson, supra*, at 285–86. (Footnote omitted).

*Charles v. Anderson*, No. 82–73619, slip op. at 14–15 (E.D. Mich. July 27, 1983).

We, therefore, conclude that the district court properly found that the instructions to the jury constituted harmless error.

### III.

### Effective Assistance of Counsel

■ Finally, the appellant asserts that he was denied his Sixth Amendment right to effective assistance of counsel. On re-

---

**2.** In the case of *Connecticut v. Johnson*, 460 U.S. 73, 103 S.Ct. 969, 74 L.Ed.2d 823 (1983) the Court divided equally on the issue of whether instructions held improper under *Sandstrom* could ever be said not to have contributed to the jury's verdict. Four justices favored a traditional harmless error only in rare cases (e.g., where the defendant conceded the intent issue).

viewing the record of this case, this assertion cannot be substantiated.

This claim is based on his counsel eliciting on direct examination the fact that Charles had taken mescaline, acid and other drugs, and had watched stag movies. Additionally, counsel elicited from Charles the fact he had been denied parole and escaped from prison. The appellant asserts that the cumulative effect of these disclosures allowed the prosecutor to argue that he was a man with a bad background.

The standard for effective assistance of counsel in this Circuit was enunciated in *Beasley v. United States*, 491 F.2d 687 (6th Cir.1974). The court held that effective assistance of counsel required under the Sixth Amendment was that "reasonable likely to render ... effective assistance of counsel." 491 F.2d at 696. In the instant case, as the district court noted, the elicitation of this information is consistent with and not unreasonable trial strategy. Evidence of such drug use by the appellant and two companions who were key prosecution witnesses may well have been a foundation for attacking the credibility of these two witnesses. Moreover, the appellant's extensive account of his activities was consistent with a trial strategy of bolstering the appellant's credibility. Additionally, the record evinces that defense counsel performed "at least as well as a lawyer with ordinary training and skill in the criminal law ... and conscientiously protected his client's interest." *Beasley*, 491 F.2d at 696. Based on these factors, the district court properly found that there was no denial of effective assistance of counsel.

Accordingly, we affirm the decision of the Honorable James P. Churchill denying the writ of habeas corpus.