Bobby WASHINGTON, Petitioner,

v.

Charles J. SCULLY, Superintendent
Green Haven Correctional Facility,
Respondent.

No. 84 Civ. 9349 (JES).

United States District Court,
S.D. New York.

Aug. 7, 1986.

Legal Aid Soc., Federal Defender Services Unit, New York City (Barry Bassis, of counsel), for petitioner.

Mario Merola, Dist. Atty., Bronx County, Bronx, N.Y. (Billie Manning and Allen H. Saperstein, Asst. Dist. Attys., of counsel), for respondent.

OPINION AND ORDER

SPRIZZO, District Judge:

## I. BACKGROUND

Petitioner Bobby Washington has made application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (1982). On November 19, 1975, following a jury trial in the Supreme Court of the State of New York, Bronx County (Tierney, J.), petitioner was convicted of murder in the second degree (New York Penal Law § 125.25) and criminal possession of a weapon in the third and fourth degrees (New York Penal Law §§ 265.01,.02). Washington was sentenced to concurrent terms of fifteen years to life and zero to seven years, respectively, on the murder and possession of a weapon in the third degree convictions. Petitioner was not sentenced on his conviction of possession of a weapon in the fourth degree.

The instant petition for a writ of habeas corpus was referred by the Court to a Magistrate for a report and recommendation ("Mag. R."). After receipt of petitioner's objections and respondent's objections, the Court has considered the petition *de novo, see* 28 U.S.C. § 636(b)(1) (1982), and heard oral argument on the issues raised by counsel for the parties.

A. *Petitioner's Trial and the Trial Judge's Jury Instructions*

The facts relating to petitioner's trial and conviction are set forth in *Washington v. Harris,* 650 F.2d 447, 449 (2d Cir.1981), *cert. denied,* 455 U.S. 951, 102 S.Ct. 1455,

71 L.Ed.2d 666 (1982). Familiarity with that decision is presumed. Briefly, the evidence at trial established that petitioner intervened in a struggle between his wife and Peggy Mickens, after Mickens had attacked Mrs. Washington with a knife. *See id.* at 449. The petitioner shot Mickens through the eye and then, after wrestling the knife from Mickens, slashed Mickens repeatedly. *See id.*

At trial, defense counsel relied solely on a theory of self defense and justification. *See id.;* N.Y. Penal Law § 35.15 (McKinney 1975 & Supp.1986). The trial court submitted four counts to the jury; murder in the second degree, *see* N.Y. Penal Law § 125.25(1), manslaughter in the first degree, *see* N.Y. Penal Law § 125.20(1), and criminal possession of a weapon in the third and fourth degrees. *See* Trial Transcript ("Tr.") at 376.

The issues raised by the instant petition center around the trial court's charge to the jury. Early on in the court's charge, the trial judge instructed the jury on the legal presumption of innocence and the State's burden of proof as follows:

> In all criminal cases, the defendant is presumed to be innocent unless and until his guilt is established beyond a reasonable doubt, and the burden of proving the guilt of the defendant rests at all times upon the People.

*See* Tr. at 347–48.

The trial court then repeated its instruction to the jury regarding the prosecution's burden of proof:

> I urge you most strenuously to keep in mind the following admonition:
> In any criminal case the People have the burden of establishing each and every element of the crime charged by proof beyond a reasonable doubt before a jury may convict a defendant.

*See* Tr. at 365; *see also* Tr. at 347.

Turning to the subject of intent, the trial judge instructed the jury that the People must prove the requisite intent for each count beyond a reasonable doubt. *See* Tr. at 378–79. With respect to the issue of intent in general the court said:

> On the question of intent, you may infer that a person intends that which is the natural and necessary and probable consequences of the acts performed by him and unless the act was done under circumstances to preclude the existence of such intent, you have a right to find from the results produced an intention to effect it.

*See* Tr. at 380.

In his instruction on intent as an element of murder, the trial judge referred back to his general intent instruction and further instructed the jury to consider the "surrounding circumstances you adduce from the evidence in this case which you determine have been proven by evidence beyond a reasonable doubt." *See* Tr. at 382.

Later on in the court's charge, with respect to the manslaughter count, the court charged:

> I have already instructed you on the subject of intent. You will recall, intent is a mental operation and can be proved only by facts and circumstances surrounding the acts.
> Our law says a person intends that which is the necessary and natural consequence of any act performed by him.

*See* Tr. at 384A–85.

With respect to the charge of criminal possession of a weapon in the fourth degree, the trial judge instructed the jury that:

> You will observe that intent is an essential element of this crime. You will recall my instruction to you on intent; that it is a mental operation that can be proved only by the facts and circumstances surrounding the act; and a person intends that which is the necessary and natural consequences of any act he performs.

*See* Tr. at 388–89.

Finally, the Court notes that the trial judge specifically instructed the jury not to "consider nor render a verdict on the crime of manslaughter" if they found the petitioner guilty of murder. *See* Tr. at 376–77.

Moreover, the trial judge instructed the jury to "consider and render a verdict on [the weapons charge], independent of murder—on [sic] the other crimes charged." *See* Tr. at 387.

### B. *Subsequent History*

Subsequent to petitioner's conviction on the murder and weapons counts, petitioner's case followed a unique and tortuous path through both the state and federal courts. On April 12, 1977, the Appellate Division unanimously affirmed petitioner's judgment of conviction without opinion. *See People v. Washington*, 57 A.D.2d 739, 393 N.Y.S.2d 631 (1st Dept.1977). On May 12, 1977, leave to appeal this decision to the New York Court of Appeals was denied. *See People v. Washington*, 42 N.Y.2d 831, 396 N.Y.S.2d 1035, 364 N.E.2d 1352 (1977). Petitioner's *pro se* petition for a writ of certiorari to the United States Supreme Court was also denied. *See Washington v. New York*, 434 U.S. 930, 98 S.Ct. 418, 54 L.Ed.2d 291 (1977).

On July 27, 1979, petitioner filed his first application for a writ of habeas corpus. This petition was denied. *See Washington v. Harris*, 486 F.Supp. 1037 (S.D.N.Y.1980) (Cannella, J.). Thereafter, on petitioner's motion and with the consent of the state, on June 11, 1980, the United States Court of Appeals for the Second Circuit remanded petitioner's case to the district court for consideration of an amended petition for a writ of habeas corpus.

The district court granted this amended petition for a writ of habeas corpus. *See Washington v. Harris*, 502 F.Supp. 1267 (S.D.N.Y.1980) (Cannella, J.). Relying primarily on *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979) and *United States v. Robinson*, 545 F.2d 301 (2d Cir.1976), the district court concluded that the trial judge's instructions on the issue of petitioner's intent violated petitioner's due process rights. *See Washington, supra*, 502 F.Supp. at 1272–73. According to the court, "a reasonable juror may well have interpreted the trial court's instructions on the issue of intent as creating either a conclusive or mandatory presumption of intent from proof of the killing itself." *See id.* at 1273.

In *Washington v. Harris*, 650 F.2d 447 (2d Cir.1981), *cert. denied*, 455 U.S. 951, 102 S.Ct. 1455, 71 L.Ed.2d 666 (1982), the Second Circuit vacated the writ of habeas corpus. The Second Circuit agreed with the district court that the trial judge's instructions on the manslaughter and the criminal weapons possession charges, standing alone, were constitutionally defective. *See id.* at 453. Thus, the court noted that if the manslaughter and weapons charges "were the only instructions given, then ... *Sandstrom* ... would require Washington's release or retrial." *See id.* The Second Circuit concluded, however, that there was "no constitutional error in the instructions given ... before and during discussion of the murder charge." *See id.* Since the jury never reached the manslaughter charge, because it convicted petitioner on the murder charge, and since the petitioner only received a concurrent, lesser sentence on the weapons charge, the Second Circuit reasoned that the incorrect jury instructions did not automatically require the issuance of the writ. *See id.*

According to the court, the crucial issue in petitioner's petition was "whether the later, constitutionally defective instructions on [the manslaughter and weapons] counts spill over and infect the earlier ones on the murder charge." *See id.* The Second Circuit, however, chose not to rule on this question. Instead, the court noted that this issue "has not been examined by either the state courts or the federal district court." *See id.* Although the court was "aware that Washington attacked the jury instructions in the Appellate Division", the court noted that "the definitive state court construction of *Sandstrom*, which agrees with our own, occurred thereafter." *See id* at 454. Thus, according to the court, "[u]nder the circumstances we think it appropriate that the state courts now be given the opportunity in the first instance to rule on the question of spillover effect." *See id.* The Second Circuit therefore re-

manded the petition to the district court with directions to dismiss the petition without prejudice to refiling after petitioner exhausted appropriate state remedies. *See id.*

Subsequently, petitioner made a motion to vacate judgment, pursuant to N.Y. Crim. Proc. § 440.10(1)(h) (McKinney 1983) ("440.-10 motion"), in the Supreme Court of New York. In a written opinion, Justice Tierney denied petitioner's motion. *See People v. Washington,* No. 1999/73, (N.Y.Sup.Ct. Nov. 26, 1983). The court noted that petitioner had failed to raise the issue of spillover "during the entire appellate process." *See id.* at 9. Thus the court held that petitioner's application should be denied pursuant to N.Y.Crim.Proc.L. § 440.-10(2)(c). *See id.* at 10.[1] In the alternative, the court also ruled on the merits that "any improper instruction regarding the essential element of intent did not spill over and

affect in any way the verdict—guilty of murder. *"See id.* at 12. On February 7, 1984, the Appellate Division affirmed the denial of petitioner's 440.10 motion without opinion, *see People v. Washington,* 99 A.D.2d 934, 471 N.Y.S.2d 936 (1st Dep't 1984), and on April 5, 1984, petitioner's application for leave to appeal to the New York Court of Appeals was denied. *See People v. Washington,* 62 N.Y.2d 655, 476 N.Y.S.2d 1051, 464 N.E.2d 1002 (1985).

Petitioner subsequently filed the instant petition. Once again, relying on *Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979), petitioner argues that the trial judge's instructions unconstitutionally shifted the burden of proof to the petitioner on the issue of intent. *See* Petitioner's Memorandum of Law ("PML") at 18. The Court now turns to the merits of petitioner's claim.[2]

---

1. Section 440.10(2)(c) provides in relevant part: [T]he court must deny a motion to vacate a judgment when:

   (c) Although sufficient facts appear on the record of the proceedings underlying the judgment to have permitted, upon appeal from such judgment, adequate review of the ground or issue raised upon the motion, no such appellate review or determination occurred owing to the defendant's unjustifiable failure to take or perfect an appeal during the prescribed period or to his unjustifiable failure to raise such ground or issue upon an appeal actually perfected by him.

2. In light of the Second Circuit's holding in *Washington, supra,* petitioner can only succeed on his *Sandstrom* claim if the constitutionally defective instructions relating specifically to intent to commit manslaughter and intent to possess weapons "spill[ed] over and infect[ed] the earlier ones on the murder charge." *See* 650 F.2d at 453. Respondent, relying on the procedural default doctrine set forth in *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 55 L.Ed.2d 594 (1977), strenuously argues that petitioner is barred from raising the spillover issue on federal habeas review. *See* Respondent's Memorandum of Law in Opposition ("RMO") at 11; Respondent's Response to the Magistrate's Report and Recommendation at 2–3.

   It is clear that when a state court rejects a defendant's claim presented on post-conviction review, on the grounds that the defendant failed to initially raise the claim on his direct appeal, the defendant may not obtain federal habeas review on that claim absent a showing of "cause and actual prejudice." *See Reed v. Ross,* 468 U.S. 1, 11,

   104 S.Ct. 2901, 2903, 82 L.Ed.2d 1 (1984); *see also Forman v. Smith,* 633 F.2d 634, 640 (2d Cir.1980). In the instant petition, the New York State Supreme Court held, *inter alia,* that petitioner's spillover claim must be denied due to petitioner's failure to raise the issue on direct appeal, *see Washington, supra,* No. 1999/73 at 9, and the appellate division affirmed without opinion. *See People v. Washington,* 99 A.D.2d 934, 471 N.Y.S.2d 936 (1st Dep't 1984).

   Despite that state court holding, petitioner argues that he did adequately raise the issue in his initial appellate division brief and therefore that no procedural default occurred. *See* Reply Memorandum of Law For Petitioner, ("RMP") at 3–5. As fleshed out in greater detail at oral argument, petitioner's argument appears to be that the Court should overlook the state court's dismissal on procedural grounds because petitioner raised the spillover issue on his direct appeal with sufficient specificity to satisfy the exhaustion of state remedies requirement. *See* Transcript of Oral Argument ("Tr. Oral Arg.") at 17–18. *Compare Daye v. Attorney General of New York,* 696 F.2d 186, 192 (2d Cir.1982) *(en banc) cert. denied,* 464 U.S. 1048, 104 S.Ct. 723, 79 L.Ed.2d 184 (1984) (a petitioner has exhausted his state court remedies, pursuant to 28 U.S.C. § 2254(c), if he fairly presents his federal constitutional claim to the state court).

   Thus, petitioner argues that the Second Circuit in *Washington, supra,* 650 F.2d at 454 dismissed the petition without prejudice, not because petitioner had failed to adequately raise the *Sandstrom* issue in the state courts, but only because the specific spillover issue did not arise until after the Second Circuit's decision. *See* RMP at 3, 4.

## II. ANALYSIS

In *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979), the Supreme Court held that the Due Process Clause of the Fourteenth Amendment prohibits the use of conclusive or mandatory presumptions of intent in a jury charge because they have the effect of relieving the State of its burden of proving every element of a criminal offense beyond a reasonable doubt. *See id.* at 520–24, 99 S.Ct. at 2457–59; *see also Francis v. Franklin*, 471 U.S. 307, 105 S.Ct. 1965, 1970, 85 L.Ed.2d 1965 (1985). The crucial inquiry in determining whether a *Sandstrom* violation has occurred is whether a reasonable juror could have interpreted the trial judge's instructions as shifting the burden of proof to the defendant. *See Franklin, supra,* 105 S.Ct. at 1971–72; *Sandstrom, supra,* 442 U.S. at 514, 99 S.Ct. at 2454. When considering the merits of a claimed *Sandstrom* violation, the court must consider the charge as a whole; no single instruction may be viewed in iso-lation. *See Franklin, supra,* 105 S.Ct. at 1971, 1973; *Cupp v. Naughten,* 414 U.S. 141, 147, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973); *Brayboy v. Scully,* 695 F.2d 62, 66 (2d Cir.1982), *cert. denied,* 460 U.S. 1055, 103 S.Ct. 1505, 75 L.Ed.2d 934 (1983). Thus, as the Supreme Court stated in *Franklin, supra:*

> If a specific portion of the jury charge, considered in isolation, could reasonably have been understood as creating a presumption that relieves the State of its burden of persuasion on an element of an offense, the potentially offending words must be considered in the context of the charge as a whole. Other instructions might explain the particular infirm language to the extent that a reasonable juror could not have considered the charge to have created an unconstitutional presumption.

*See* 105 S.Ct. at 1971 (citations omitted).[3]

In accordance with the above stated legal principles, for the reasons set forth

---

According to petitioner, the Second Circuit in *Washington, supra,* simply wanted to give the state courts an opportunity to rule in the first instance on the spillover issue. *See* Tr. Oral Arg. at 17. Since the state courts have "declined the opportunity to make a ruling on the spillover effect," petitioner argues, the Court should overlook the state court's dismissal on procedural grounds. *See* RMP at 4–5.

The question before the Court, with respect to this contention, therefore, is whether a state court's holding that an issue was not raised on direct appeal with sufficient specficity to satisfy the state's procedural rules, is an adequate and independent ground amounting to a procedural default, *compare Smart v. Scully,* 787 F.2d 816, 820 (1986), when the issue was arguably raised on direct appeal with sufficient specificity to satisfy the exhaustion of state remedies requirement of 28 U.S.C. § 2254(c) (1982). Neither party has cited a case which deals precisely with this issue. *Johnson v. Scully,* 727 F.2d 222 (2d Cir.1984), the only case cited in petitioner's memorandum of law on the procedural default issue, is not dispositive. In that case, the court concluded that, in light of a change in the law on exhaustion, the court should not have dismissed the petition for failure to exhaust remedies in the first place. Because the court, in retrospect, had incorrectly dismissed the first petition and there-fore should have decided the merits of the petition in the first instance, the court overlooked the state court's subsequent dismissal on procedural grounds. *See id.* 223–25. Unlike the instant case, the court in *Johnson* was not asked to decide whether the procedural default rule should be applied when the federal court properly dismissed the initial petition.

Thus, the issues raised by the procedural default argument are at best unclear. Given that circumstance and the long and tortuous history of this case recited above, the Court is disinclined to dismiss the petition on the grounds of procedural default. Moreover, since the Court has denied the writ on the merits, the Court notes that a finding that there has or has not been a procedural default will have no practical impact on petitioner's custodial status.

**3.** Prior to *Franklin,* the crucial issue in this area of the law was not "whether the trial court failed to isolate and cure a particular ailing instruction, but rather whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *See Nelson v. Scully,* 672 F.2d 266, 272 (2d Cir.1982) (quoting *Cupp, supra,* 414 U.S. at 147, 94 S.Ct. at 400). *Franklin* appears to have shifted the emphasis somewhat, by requiring reviewing courts to determine whether the charge as a

below, the Court concludes that petitioner's *Sandstrom* claim must be rejected. The Court is, of course, bound by the Second Circuit's holding in *Washington, supra,* that the trial judge's instructions before and during the discussion of the murder charge did not shift the burden of proof on the issue of intent to the defendant. *See* 650 F.2d at 453. Thus petitioner's claim can only succeed if the constitutionally defective instructions relating specifically to intent to commit manslaughter and intent to possess weapons "spill[ed] over and infect[ed]" the earlier correct instructions with respect to murder. *See id.* In this regard, the Court notes that neither party has cited a case in which it was argued that an incorrect instruction on one count infected an earlier correct instruction on an entirely separate count.

Viewing the jury instructions as a whole, *see Cupp, supra,* 414 U.S. at 147, 94 S.Ct. at 400, it is clear that a reasonable juror could not have interpreted the incorrect instructions on intent relating solely to the manslaughter and weapons charges to mean that the defendant had the burden of proof on the murder charge. The trial judge specifically instructed the jury in no uncertain terms that they "need not consider nor render a verdict" on the manslaughter charge if they found the defendant guilty beyond a reasonable doubt on the murder charge. *See* Tr. at 376; *see also* Tr. at 383–84. It is a fundamental tenet of our jury system that jurors are presumed to follow the instructions given to them by the trial judge. *See Franklin, supra,* 105 S.Ct. at 1976–77 n. 9. Since the jury found

the petitioner guilty of murder, in accordance with the trial judge's instructions, it must be presumed that the jurors never considered the manslaughter charge. Therefore, the incorrect charge on manslaughter could not have affected the jury's deliberations in any way with respect to intent to murder.

Similarly, the trial judge twice instructed the jury to consider the weapons charge independently of the murder charge. *See* Tr. at 376, 387. Thus the jury, again obeying the trial judge's instructions, could not have reasonably considered the incorrect weapons charge during their deliberations with respect to intent to murder.

Moreover, the trial judge repeatedly emphasized to the jury the correct allocation of the burden of proof on intent to murder. *See* Tr. at 347–48, 365, 378–380, 382. Indeed, the trial judge urged the jury "most strenuously to keep in mind" that the "People have the burden of establishing each and every element of the crime charged by proof beyond a reasonable doubt." *See id.* at 365. The jury was specifically told three different times that the prosecution must prove intent to murder beyond a reasonable doubt before the jury could convict the defendant of murder. *See id.* at 378–79, 381, 382.[4]

In addition, the trial judge's instructions with respect to intent to murder, which correctly directed the jury to consider all "surrounding circumstances you adduce from the evidence in this case which you determine have been proved by evidence beyond a reasonable doubt," *see id.* at 382, followed closely on the heels of the trial

whole effectively eliminated the possibility that the jury interpreted the offending instruction as creating an unconstitutional presumption. *See Franklin, supra,* 105 S.Ct. at 1971.

**4.** The Supreme Court in *Franklin, supra,* held that a trial judge's general instructions that a defendant was presumed innocent and that the State was required to prove every element of the offense beyond a reasonable doubt could not cure an erroneous burden-shifting instruction on intent. *See* 105 S.Ct. at 1973–74. The Court reasoned that general instructions "are not 'rhetorically inconsistent with a conclusive or burden-shifting presumption,' because '[t]he jury

could have interpreted the two sets of instructions as indicating that the presumption was a means by which proof beyond a reasonable doubt as to intent could be satisfied.'" *See id.* at 1974 (quoting *Sandstrom v. Montana,* 442 U.S. at 518–19, n. 7, 99 S.Ct. at 2456 n. 7). However, merely because general instructions on the state's burden of proof cannot cure an incorrect instruction on intent, it does not follow that where a concededly correct charge on intent is given that such general instructions cannot serve to provide added emphasis to that correct charge. *Cf. Rivera v. Coombe,* 683 F.2d 697, 701 (2d Cir.1982), *cert. denied,* 459 U.S. 1162, 103 S.Ct. 805, 74 L.Ed.2d 1007 (1983).

judge's correct charge on intent in general. *See id.* at 380. Given the trial court's repeated emphasis of the correct charge on intent to murder, coupled with the trial court's instructions to consider the charges independently of each other, the Court cannot conclude that the erroneous instructions on the other charges infected the jury deliberations with respect to murder in any way. *Cf. Brayboy v. Scully, supra,* 695 F.2d at 66; *Nelson v. Scully,* 672 F.2d 266, 272 (2d Cir.1982), *cert. denied,* 456 U.S. 1008, 102 S.Ct. 2301, 73 L.Ed.2d 1304 (1982).

Petitioner argues that the Court should grant the instant petition because the trial judge's "weapons instructions that contained the 'natural and probable consequences' charge expressly referred back to the earlier instructions on intent, thus ensuring that the jurors would merge them." *See* PML at 21–22 (citing Tr. at 388–89); *see also* Tr. at 384A–385; *cf. Washington, supra,* 650 F.2d at 453. It would defy both logic and common sense, however, to conclude that the words—"[y]ou will recall my instruction to you on intent," *see* Tr. at 388—in the context of the entire charge could possibly have caused the jury to misunderstand the clear, correct, and emphatic instructions of the trial court on intent to murder. *Cf. Cupp, supra,* 414 U.S. at 146–47, 94 S.Ct. at 400; *United States v. Silva,* 745 F.2d 840, 852 (4th Cir.1984), *cert. denied,* 470 U.S. 1031, 105 S.Ct. 1404, 84 L.Ed.2d 791 (1985); *Brayboy, supra,* 695 F.2d at 66; *Nelson, supra,* 672 F.2d at 272. Indeed, if anything, the trial judge's instructions to "recall" the previous correct instructions on intent may well have cured the subsequent intent instructions relating to the manslaughter and weapons charges. *Cf. Brayboy, supra,* 695 F.2d at 66.

Thus, the language "you will recall my previous instructions on intent" merely informed the jurors that the subsequent instructions on intent were incomplete and directed the jurors to refer back to the complete and correct general instructions on intent. *See* Mag.R. at 12. Moreover, even if the reference back to the correct intent instruction was not sufficient to eliminate any jury confusion with respect to the manslaughter and weapons charges, there is no rational basis to conclude that that reference back had any impact on the correct instructions given earlier with respect to the murder count.

*Franklin, supra,* relied upon heavily by petitioner, *see* Petitioner's Objections to Report at 4–6, is not to the contrary. In *Franklin,* the petitioner challenged his conviction of malice murder. *See* 105 S.Ct. at 1970.[5] Unlike the instant petition, the *Franklin* case did not raise the issue of whether a correct instruction on one count could be impacted by incorrect instructions relating to separate counts. Thus, in *Franklin,* there was no dispute that the trial judge's incorrect instructions, which occurred during the trial judge's general instructions on intent, clearly related to the murder count. *See id.* at 1973; *see also, id.* at 1979 n. 1 (Powell J., dissenting).

In *Franklin,* on the "dispositive" issue of intent, the trial judge instructed the jury that a person "is presumed to intend the natural and probable consequences of his acts, but the presumption may be rebutted." *See id.* at 1969–70. The Court held that that instruction created an unconstitutional mandatory presumption of intent. *See id.* at 1973. The Court also held that the trial court's instructions as a whole failed to properly clarify and explain the offending language. *See id.* at 1973–77. Specifically, the Court concluded that the trial court's subsequent statement, which also occurred during the trial judge's instructions on intent in general, that a "person will not be presumed to act with criminal intention," did not cure the error. According to the Court, there was no "way of knowing which of the two irreconcilable instructions the jurors applied in reaching

---

5. The petitioner in *Franklin* was also tried and convicted on a charge of kidnapping. *See Franklin, supra,* 105 S.Ct. at 1969–70. The petitioner also challenged this conviction but the Supreme Court focused exclusively on the murder conviction. *Cf. id.* at 1977.

their verdict." *See id.* at 1975 (footnote omitted).

Thus, the *Franklin* case did not raise the spillover issue presented in the instant petition. In *Franklin*, because both the correct and incorrect instructions clearly related to the murder count, the Supreme Court could do no more than blindly speculate as to which of the two instructions the jury applied in reaching their verdict. *See id.* In the instant petition, however, the incorrect instructions related solely to the subsequent counts, *see* Tr. at 376, 387, and therefore the Court can readily conclude that the jurors applied only the correct instructions during their deliberations on the murder count.

In sum, unlike the jury charge at issue in *Franklin*, the charge in the instant petition, read as a whole, clearly did not create an unconstitutional burden shifting presumption on the issue of intent to murder. *Cf. Cupp, supra,* 414 U.S. at 147, 94 S.Ct. at 400; *Nelson, supra,* 672 F.2d at 272.[6]

## CONCLUSION

For the reasons set forth *infra*, the instant petition for a writ of habeas corpus is denied. The Clerk of the Court is hereby

---

**6.** Assuming *arguendo* that the trial judge's instructions on the manslaughter and weapons counts spilled over and infected the instructions with respect to murder, the Court concludes, on the whole record, that the constitutional error was harmless beyond a reasonable doubt. *Cf. Rose v. Clark,* — U.S. —, 106 S.Ct. 3101, 3106, 91 L.Ed.2d — (1986); *Chapman v. California,* 386 U.S. 18, 23, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). As a preliminary matter, however, the Court notes, as it did at oral argument, *see* Tr. Oral Arg. at 22–23, that it does not accept respondent's argument, *see* RML at 16, that any *Sandstrom* error in this case was harmless because petitioner's intent was not an issue at trial. Although petitioner relied solely on the defense of justification at trial, *see Washington, supra,* 650 F.2d 453–54, and petitioner's counsel did not argue lack of intent in his closing argument to the jury, *see* Tr. 282–314, respondent requested and received, over petitioner's objection, a lesser included offense charge on manslaughter. *See* Tr. at 276. Since the only distinction between murder in the second degree and manslaughter under New York law is the defendant's intent, *see Washington, supra,* 502 F.Supp. at 1274, the respondent's trial strategy put intent in issue at trial. The Court will therefore not let the respondent disavow their chosen trial strategy by arguing here that intent was not an issue. Moreover, as noted by Judge Cannella in *Washington, supra,* intent was an issue at trial because the petitioner relied upon his post-arrest statement, wherein he claimed that he did not intend to kill Mrs. Mickens. *See* 502 F.Supp. at 1274; Tr. at 200.

Subsequent to the oral argument on the instant petition, the Supreme Court decided *Rose, supra.* The *Rose* case makes it clear that, even if intent was an issue at trial, a *Sandstrom* error is harmless if "the evidence is so dispositive of intent that a reviewing court can say beyond a reasonable doubt that the jury would have found it unnecessary to rely on the presumption." *See Rose, supra,* 106 S.Ct. at 3104 (citations omitted).

In the instant case, petitioner first shot Mrs. Mickens in her right eye, destroying the eyeball. *See* Tr. at 132. Next, after wrestling a knife away from Mrs. Mickens, the testimony of two eyewitnesses establishes that petitioner grabbed Mrs. Mickens and stabbed her repeatedly in the neck and face. *See* Tr. at 87, 147. One eye-witness testified that, after Mickens fell to the ground, the petitioner leaned towards her body, lifted her up, and stabbed her in the throat. *See* Tr. at 150. The medical examiner who performed the autopsy on Mrs. Mickens testified that Mrs. Mickens suffered from a deep slash wound on the throat which severed her main throat artery and extended back to her backbone. *See* Tr. at 132. Moreover, Mrs. Mickens had numerous stab wounds to her hands, wrists, and knee, as well as a deep slash wound in her abdomen which perforated her intestines. *See* Tr. at 133. Petitioner did not testify or call any witnesses on his behalf at trial. Considering the entire trial record, *cf. United States v. Hasting,* 461 U.S. 499, 509, 103 S.Ct. 1974, 1980, 76 L.Ed.2d 96 (1983), the Court concludes that the evidence at trial on petitioner's intent to cause the death of Mrs. Mickens, as recited above, was so overwhelming that any error in the trial judge's instruction on intent with respect to the murder count was harmless beyond a reasonable doubt. *Cf. Charles v. Flotz,* 741 F.2d 834, 839 (6th Cir.1984), *cert. denied,* — U.S. —, 105 S.Ct. 970, 83 L.Ed.2d 973 (1985).

The Court rejects petitioner's argument, set forth in a letter to the Court dated August 4, 1986, that the Court cannot find harmless error merely because the trial judge gave a lesser included offense charge on manslaughter. The mere existence of a rational basis in the evidence to justify a lesser included offense charge, does not in itself negate the circumstance that the evidence with respect to intent was so overwhelming as to justify a finding that the *Sandstrom* error was harmless beyond a reasonable doubt.

**1234**

directed to enter judgment for the respondent accordingly.

It is SO ORDERED.